768 So.2d 223 (2000)
Laura Elaine BRUMFIELD, and Linda F. Brumfield
v.
Robert D. GAFFORD, Todd Gafford, and the Travelers Indemnity Company, the Aetna Casualty and Surety Company.
No. 99 CA 1712.
Court of Appeal of Louisiana, First Circuit.
September 22, 2000.
*224 John B. Brumfield, Jr., Baton Rouge, for Plaintiffs-Appellants Laura Elaine Brumfield and Linda F. Brumfield.
C. Michael Hart, Baton Rouge, for Defendant-Appellee Robert D. Gafford.
BEFORE: PARRO, GUIDRY, and GANUCHEAU, JJ.[1]
GUIDRY, J.
Appellants, Laura Elaine Brumfield (Laura) and Linda F. Brumfield, appeal the trial court's grant of summary judgment in favor of appellee, Robert D. Gafford (Robert). We affirm.

FACTS AND PROCEDURAL HISTORY
On or about July 14, 1996, Laura, an experienced rider, was injured when she was thrown from a horse owned by Todd Gafford (Todd) and stabled at the residential property of Robert, Todd's brother. Laura sustained an injury to her knee and a broken nose. Although the knee injury resolved within a couple of weeks, Laura had two surgeries and continues to experience headaches in connection with the injury to her nose.
On March 19, 1997, appellants filed a petition for damages, naming Todd, Robert, and Travelers Indemnity Company/Aetna Casualty and Surety Company (Travelers), Robert's insurer, as defendants. Answers to the petition, denying the allegations therein, were filed by Travelers and Robert on May 19, 1997, and December 18, 1997, respectively.
*225 On February 2, 1999, Robert filed a motion for summary judgment, averring that he was not the owner or custodian of the horse, that there was no agency relationship between Robert and Todd that would render Robert liable for the actions of Todd, that the horse did not present an unreasonable risk of harm, and that even if the horse did present an unreasonable risk of harm, he did not know, nor should he have known that the horse's behavior would cause harm to appellants. A hearing on the motion was held on March 29, 1999. A judgment granting the motion was rendered on that date in open court, and a written judgment was signed on April 9, 1999.
Appellants moved for a suspensive appeal on May 7, 1999, which motion was granted on May 18, 1999. Thereafter, on July 16, 1999, this court issued a show cause order as to whether the judgment was a final, appealable judgment, and on August 13, 1999, the trial court issued an order designating the judgment as final and appealable.

ASSIGNMENTS OF ERROR
Appellants asserts the following assignments of error:
1. The Trial Court erred in granting summary judgment on liability of defendant[s], Robert D. Gafford, Travelers Insurance Company/Aetna Casualty and Surety Company, pursuant to Louisiana Civil Code Article 2317, and dismissing plaintiffs' claims against such defendants.
2. The Trial Court erred in granting summary judgment on liability of defendant[s], Robert D. Gafford, Travelers Insurance Company/Aetna Casualty and Surety Company, pursuant to Louisiana Civil Code Article 2320, and dismissing plaintiffs' claims against such defendants.

DISCUSSION

Summary Judgment
On appeal, summary judgments are reviewed de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. J. Ray McDermott, Inc. v. Morrison, 96-2337, p. 9 (La.App. 1st Cir.11/7/97), 705 So.2d 195, 202, writs denied, 97-3055, 97-3062 (La.2/13/98), 709 So.2d 753, 754. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover-appellant is entitled to judgment as a matter of law. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512, p. 26 (La.7/5/94), 639 So.2d 730, 750.
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. Rambo v. Walker, 96-2538, p. 4 (La.App. 1st Cir.11/7/97), 704 So.2d 30, 32. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2).
The burden of proof is on the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. Thereafter, if the adverse party fails to provide factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2).

*226 Liability

Appellants argue that Robert had custody of the horse, that the horse presented an unreasonable risk of harm, and that Robert knew or should have known that the horse presented an unreasonable risk of harm. Appellants' claims against Robert are based on Louisiana Civil Code Articles 2317[2] and 2317.1, which was added to the Louisiana Civil Code in 1996, effective April 16, 1996. Before a defendant can be held liable under Article 2317, the plaintiff must prove that 1) the thing which caused damage was in the defendant's custody and control (garde); 2) the thing had a vice or defect which created an unreasonable risk of harm; and 3) the injuries were caused by a defect. Socorro v. City of New Orleans, 579 So.2d 931, 937 (La.1991); McKey v. General Motors Corporation, 96-0755, p. 5 (La.App. 1st Cir.2/14/97), 691 So.2d 164, 168. Additionally, Article 2317.1 adds the requirement that the injured plaintiff prove the guardian "knew or, in the exercise of reasonable care, should have known" of the unreasonable risk of harm presented by the thing prior to the accident.
Custody and control (garde) are distinct from ownership and refer to a person's supervision and control over a thing posing an unreasonable risk of harm. Tyler v. Our Lady of the Lake Hospital, Inc., 96-1750, p. 6 (La.App. 1st Cir.6/20/97), 696 So.2d 681, 685. The determination of who has garde over a thing is made through a process of policy considerations similar to that used in determining other delictual duties. King v. Louviere, 543 So.2d 1327, 1328-29 (La.1989).
To assist the trier of fact in this deliberation th[e supreme] court has set forth several general principles: the liability arises from the guardian's legal relationship to the thing whose defect creates an unreasonable risk of injury to others. The garde is the obligation imposed by law on the proprietor of a thing, or on one who avails himself of it, to prevent it from causing damage to others. The things in one's care are those things to which one bears such a relationship as to have the right of direction and control over them, and to draw some kind of benefit from them. The guardian is in a better position than the innocent victim to detect, evaluate and take steps to eliminate an unreasonable risk of harm arising in the thing.
King, 543 So.2d at 1329 (citations omitted).
In the present case, it is clear from the record before us that Robert did not have custody or garde over the horse from which Laura was thrown. Laura's deposition testimony was that Robert informed her father that Todd had a horse for sale. On July 11, 1996, Laura, accompanied by her parents, went to Robert's residential property to look at the horse. However, because Todd and the trainer, Jacob Bynum (Jacob), were not present on that day, Laura was only able to observe the horse from the other side of the pasture's fence. She touched the horse through the fence and, according to Laura, the horse seemed gentle. Laura testified that she was unable to get any information about the horse from Robert, because he was just the owner's brother and did not know much about the horse.
Laura and her mother, Linda, returned to Robert's residential property on July 13, 1996, the day before the accident. On that day, Robert and Todd were both present. Laura was again not able to ride the horse that day because Jacob "never showed up." Todd, however, did tell her a little about the horse's training, age, and disposition.
Finally, on July 14, 1996, Jacob was present at Robert's residential property when Laura, her parents, and her trainer returned to see the horse. On that day, *227 Jacob discussed the horse in more detail with Laura. Jacob then rode the horse and allowed Laura and her trainer to ride also.
Linda's deposition is also in the record. According to her testimony, she never had any discussions with Robert about the horse. The only information she ever received from Robert was that his brother wanted to sell a cutting horse.
Nothing in the record indicates that Robert was responsible for the care of the horse. Furthermore, the record shows that he had no right of direction or control over the horse. He simply allowed his brother to stable the horse on his property.
Thus, we conclude that Robert did not have garde over the horse. Accordingly, we find no error in the trial court's grant of summary judgment in favor of Robert.
Additionally, appellant argues that Robert, by nature of an agency relationship with Todd, is vicariously liable for the negligence of Todd. This argument lacks merit.
In order for an employer to be held liable for the actions of an employee under Article 2320,[3] the plaintiff must show (1) that a master-servant or employer-employee relationship existed between the employee tortfeasor and the employer, and (2) that the tortious act of the servant or employee was committed within the scope and during the course of his employment with the employer sought to be held liable. Parmer v. Suse, 94-2200, p. 4 (La.App. 1st Cir.6/23/95), 657 So.2d 666, 668, writ denied, 95-1853 (La.11/3/95), 662 So.2d 10.
In determining whether an employment relationship exists the jurisprudence of this state has uniformly held that the most important element to be considered is the right of control and supervision over an individual. Factors to be considered in assessing the right of control are the selection and engagement of the worker, the payment of wages and the power of control and dismissal.
Parmer, 94-2200 at 4, 657 So.2d at 668 (citations omitted).
Nothing in the record even suggests that Todd was the agent of Robert. However, assuming for purposes of discussion that Todd was Robert's agent and that Todd's conduct was tortious, a principal is not liable for the physical torts of a non-servant agent. Only when the relationship of the parties includes the principal's right to control physical details of the actor as to the manner of his performance, which is characteristic of master and servant, does the person in whose service the act is done become subject to liability for the physical tortious conduct of the actor. Daniels v. Dauphine, 557 So.2d 1062, 1065 (La.App. 2d Cir.), writ denied, 561 So.2d 100 (La.1990); but see Independent Fire Insurance Company v. Able Moving and Storage Company, Inc., 94-1982 (La.2/20/95), 650 So.2d 750.
As previously stated, the evidence in the record demonstrates that Robert merely allowed his brother to keep the horse at his residential property. Contrary to appellants' argument on appeal, nothing in the record supports a finding that a master-servant relationship existed between Todd and Robert that would make Robert answerable for any negligence by Todd.[4]

CONCLUSION
For the foregoing reasons, the trial court's grant of summary judgment in favor of Robert D. Gafford, dismissing this action against him, is affirmed. Costs are *228 assessed to appellants, Laura Elaine Brumfield and Linda F. Brumfield.
AFFIRMED.
NOTES
[1] Judge Richard J. Ganucheau of the Orleans Parish Civil District Court is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Louisiana Civil Code Article 2317 provides, in pertinent part: "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody...."
[3] Louisiana Civil Code Article 2320 provides in pertinent part: "Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed."
[4] The question of whether Todd was negligent is not an issue in the appeal. Thus, we express no opinion as to whether Todd was, in fact, negligent.