950 So.2d 703 (2006)
Lynette A. GIRARD
v.
PATTERSON STATE BANK and St. Paul Guardian Insurance Company.
No. 2006 CA 0049.
Court of Appeal of Louisiana, First Circuit.
November 3, 2006.
Writ Denied January 26, 2007.
*704 Eric P. Duplantis, Franklin, Counsel for Plaintiff/Appellant Lynette A. Girard.
Patricia McKay Clotiaux, Metairie, Counsel for Defendants/Appellees Patterson State Bank and St. Paul Guardian Insurance Company.
Before: KUHN, GAIDRY, and WELCH, JJ.
KUHN, J.
Claimant-appellant, Lynette A. Girard, appeals the grant of summary judgment by the Office of Workers' Compensation (OWC) in favor of defendant-appellee, Patterson State Bank (PSB), concluding that she had not sustained an accident arising out of and in the course of her employment. We affirm.

ISSUE
The sole issue before us in this appeal is whether a loan servicing clerk of a bank, who is injured by a phlebotomist when she voluntarily participates in a blood donation drive during her work hours at a mobile unit parked on her employer's premises, has sustained an accident arising out of and in the course of her employment so as to be entitled to compensation benefits under the Louisiana Workers' Compensation Act.

FACTS AND PROCEDURAL BACKGROUND
On August 13, 2003, Ms. Girard went into a mobile blood donation unit owned by United Blood Services (UBS), which was parked on the premises of her employer, PSB. A phlebotomist drew blood, immediately causing a burning sensation in Ms. Girard's arm, and she could not move her fingers. After advising her that he must have hit a nerve, the phlebotomist adjusted *705 the needle, which allowed Ms. Girard to move her fingers, but the burning sensation continued. As a result, she has had constant pain and eventually was diagnosed with Complex Regional Pain Syndrome. Ms. Girard returned to work, seeing doctors regularly during that time, but by November 2003, she could no longer perform her duties as a loan servicing clerk. Since then, she has not worked anywhere.
On August 13, 2004, Ms. Girard filed a disputed claim form, averring that she was entitled to receive compensation benefits from PSB as a result of the injury she sustained while donating blood. PSB answered the lawsuit generally denying her claims and, in June 2005, filed a motion for summary judgment seeking dismissal from the lawsuit, averring that Ms. Girard had not sustained an accident that arose out of and in the course of her employment. OWC agreed, and on October 20, 2005, issued a judgment, granting summary judgment and dismissing Ms. Girard's claims against PSB. This appeal by Ms. Girard followed.

DISCUSSION
On appeal, summary judgments are reviewed de novo under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Brumfield v. Gafford, 99-1712, p. 3 (La.App. 1st Cir.9/22/00), 768 So.2d 223, 225. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover-appellant is entitled to judgment as a matter of law. Id.
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. Id., 99-1712 at pp. 3-4, 768 So.2d at 225.
Under La. R.S. 23:1031(A), an employer is required to pay workers' compensation benefits to an employee not otherwise eliminated from receiving benefits if the employee sustains an injury by accident "arising out of and in the course of his employment." The arising-out-of and the in-the-course-of elements are not synonymous but cannot be considered in isolation from each other. Jackson v. American Ins. Co., 404 So.2d 218, 220 (La.1981). The Jackson court explained that the in-the-course-of element brings into focus the time and place relationship between the risk and the employment. The arising-out-of element, on the other hand, suggests an inquiry into the character or origin of the risk. A strong showing with reference to one of these elements may compensate for a relatively weak showing with reference to the other. Id. As a corollary, it follows that whenever the showing with respect to both requirements is relatively weak a denial of compensation is indicated. Id. In assessing the arising-out-of element, it is appropriate to focus on two factors: the extent to which employee attendance at the event was mandatory and the degree to which the employer's purpose was served by the activity which gave rise to the injury. See Lexington House v. Gleason, 98-1818, p. 3 (La.App. 3d Cir.3/31/99), 733 So.2d 123, 124, writ denied, 99-1290 (La.6/25/99), 746 So.2d 603 (citing Jackson, 404 So.2d at 220).
The evidence admitted in conjunction with the motion for summary judgment consisted of Ms. Girard's deposition testimony and the affidavit of Jason Watson, a *706 senior vice president and cashier for PSB. An examination of the evidence reveals the following established facts for purposes of our de novo review of the grant of summary judgment.
Ms. Girard was a loan servicing clerk for PSB. Her duties included answering phones, working on the computer, filing, moving boxes of files, and ensuring loan applications complied with the rules and had proper supporting documentation.
Ms. Girard testified that at least twice a year, the UBS mobile unit came onto the PSB premises for blood drives. Bank employees and members of the public were encouraged to donate blood during the drive. She became aware of a blood drive when signs were posted throughout the bank, encouraging blood donations. Ms. Girard believed that some of the posted signs were provided by UBS and some were provided by PSB as well. Ms. Girard was given a memo at a Monday morning meeting, advising her to give blood if she wanted and displaying information concerning the hours the unit would be accepting donations.
Ms. Girard testified that PSB did not require employees to give blood, she felt no coercion from her employer to donate, and not all her co-employees donated blood. Ms. Girard explained that she gave blood to UBS because she thought it was the morally correct thing to do and because PSB asked her to do so. She felt that because PSB had posted signs, it was "pretty much ask[ing] that you give so that other people will give." Ms. Girard said that she was a regular blood donor and had donated at an earlier blood drive on the PSB premises once before. Since the August 13, 2003 incident, she had not donated any blood.
Mr. Watson's affidavit established that the blood drive was not a part of either PSB's United Way effort or any type of competition among banks or other businesses. He attested that PSB simply allowed the blood mobile unit to park in its parking lot and to conduct a blood drive at that location. According to Mr. Watson, PSB did not require its employees to participate in the blood drive, although they were encouraged if they wanted to do so. There was no reward given to employees who donated, and no punishment meted to those who did not. Mr. Watson stated that he did not give blood in that blood drive.
Insofar as the time and place relationship between the risk and the employment of the in-the-course-of element, the evidence shows that at the time of the injury, Ms. Girard was on her employer's premises, ostensibly during her regular work hours, when she donated blood in the mobile unit parked on PSB's premises.[1] But donating blood was clearly not among her job duties as a loan servicing clerk. Thus, the in-the-course-of element does not demonstrate an overwhelmingly strong relationship between the risk of injury of an inaccurate placement of a needle by a phlebotomist and Ms. Girard's employment *707 duties of processing loan applications for PSB.
Likewise, we find the arising-out-of element, which addresses the character or origin of the risk, falls short of establishing Ms. Girard's entitlement to compensation benefits under the Louisiana Workers' Compensation Act. Ms. Girard admitted that her participation was not required and that she did not feel coerced by her employer to donate blood to UBS during the blood drive. Mr. Watson's affidavit established that PSB employees were neither rewarded nor sanctioned as a result of their decisions of whether to participate in the blood drive. And Mr. Watson's lack of participation created an inference that those employees who chose not to donate were not subjected to employment-related repercussions. Thus, through the evidence, PSB clearly demonstrated that Ms. Girard's participation was not mandatory. While she may have felt it beneficial to the blood drive that she participate, the record contains no evidence to show that Ms. Girard's belief was based on anything her employer said or did in conjunction with the UBS blood drive. Thus, in response to PSB's showing, Ms. Girard offered no proof that her employer expressly or impliedly mandated her participation in the blood drive.
Insofar as the evidence establishing the degree to which the employer's purpose was served, through Mr. Watson's affidavit, PSB showed that the mobile blood unit simply parked on the bank premises. Ms. Girard offered no evidence to counter this showing so as to support a finding that her participation in the blood drive furthered her employer's purposes.
Accordingly, having failed to establish that either the in-the-course-of or the arising-out-of elements strongly favored her, we find no error in OWC's grant of summary judgment based in its conclusion that Ms. Girard did not sustain an accident arising out of and in the course of her employment so as to entitle her to benefits under La. R.S. 23:1031(A).

DECREE
OWC's grant of summary judgment, dismissing Ms. Girard's claims against PSB, is affirmed. Appeal costs are assessed to Ms. Lynette A. Girard.
AFFIRMED.
NOTES
[1] Although in brief Ms. Girard maintains that during her regular work hours, without having to account for her whereabouts on a time clock or otherwise, she left the area that she normally attended to her duties and traversed PSB's premises to the mobile blood unit to donate blood, the record is devoid of evidence to support these factual assertions. In its appellate brief, PSB states, "At some point during the day on August 13, 2003, Ms. Girard left her desk at the bank, walked out of the bank building, crossed a short part of the parking lot and went into UBS's mobile blood donation unit," apparently conceding that Ms. Girard's injury occurred during her regular working hours. Thus, for purposes of this appeal, we assume that the injury occurred during Ms. Girard's regular hours of employment.