ROBERT C. LEHMAN
v.
BANK ONE, NA
No. 2007 CA 0194.
Court of Appeals of Louisiana, First Circuit.
January 30, 2008.
ROBERT C. LEHMAN, Counsel Pro Se, Plaintiff/Appellant.
JOHN W. HITE, III, SUSAN G. GUILLOT, BANK ONE, N.A., Counsel for Defendant/Appellee.
Before: PARRO, KUHN, and DOWNING, JJ. PARRO, J., Concurs in the result only, DOWNING, J., dissents and assigns reasons.
KUHN, J.
Plaintiff-appellant, Robert C. Lehman, appeals the trial court's grant of summary judgment in favor of defendant-appellee, Bank One N.A. (the Bank), essentially holding that Lehman had no right to enforce a counterfeit check. For the reasons that follow, we affirm.

PROCEDURAL AND FACTUAL BACKGROUND
In his petition, Lehman alleges that a purported cashier's check, issued in his name as payee by the Bank in the amount of $21,500, was given by a third party to him as compensation for the purchase of a motor vehicle owned by Lehman. On March 17, 2003, Lehman presented the cashier's check to the Bank, requesting immediate payment. After he was advised "that the check was good and that the funds were immediately available," Lehman requested that the entire proceeds "be accepted and deposited for immediate credit" to his home equity line of credit account. On March 26, 2003, he received a telephone call from the Bank's branch manager, who alerted him of "possible account number discrepancies on the cashier's check" and advised that the home equity line of credit account would likely be debited for the amount of $21,500 previously credited. In written correspondence, Lehman was subsequently advised by the Bank that the amount previously applied to the balance of his home equity line of credit account had been reversed.
On June 5, 2003, Lehman filed this lawsuit seeking payment of the full amount of the cashier's check, reimbursement of a late fee assessed to his home equity line of credit account subsequent to the debit of the $21,500 payment by the Bank, and consequential damages. After the Bank answered the lawsuit, it filed a motion for summary judgment, asserting entitlement to a dismissal of Lehman's claims under the provisions of the Louisiana Commercial Laws set forth in La. R.S. 10:3-101 through 4-407. Lehman filed a cross motion for summary judgment, seeking a judgment for all relief prayed for in his petition, also based on the application of the provisions of the Commercial Laws. After a hearing, the trial court granted the Bank's motion for summary judgment and denied relief to Lehman. This appeal by Lehman follows.

DISCUSSION
On appeal, summary judgments are reviewed de novo under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Brumfield v. Gafford, 99-1712, p. 3 (La. App. 1st Cir. 9/22/00), 768 So.2d 223, 225. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Id. A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. Id., 99-1712 at pp. 3-4, 768 So.2d at 225. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Samaha v. Rau, 06-1561, p. 3 (La. App. 1st Cir. 5/4/07), 961 So.2d 447, 449-50.
The parties do not dispute that the document resembling a cashier's check, for which the Bank was to be both drawer and drawee, see La. R.S. 10:3-104(g), was counterfeit.[1] The affidavit submitted into evidence by Lehman stated:
As consideration for the sale of a motor vehicle, I received a check made payable to me which on its face stated that it was a cashier's check drawn on [the Bank] in the amount of $21,500. ...
On March 17, 2003, I personally presented the ... check at [the Bank] with a request for immediate payment in cash which $21,500.00 cash was tendered to me at the time of presentation of the check.[2] ...
Contemporaneously with the above noted bank transaction, I paid the $21,500.00 proceeds received from negotiation of [the Bank's] cashier[`s] check to the credit of my account to reduce the balance of an existing line of credit with [the Bank]. ...
Pursuant to a letter ... postmarked April 7, 2003, I was notified that my line of credit would be debited $21,500.00, purportedly because the ... cashier's check was counterfeit. (Footnote added.)
Based on these facts, and a more detailed account of his interaction with Bank personnel on March 17, 2003 set forth in a supplemental affidavit, Lehman asserts that once he presented the counterfeit cashier's check for immediate payment over the counter at the bank on which the check was purportedly drawn, payment was deemed to be final. See La. R.S. 10:4-213(a)(2)(i) (stating that the time of settlement by a bank with respect to a customer's tender of settlement of a cashier's check is when the check is sent or delivered to the bank); and La. R.S. 10:4-215(a)(1) (providing that an item is finally paid by a payor bank when the bank has paid the item in cash). Thus, he suggests that because the purported cashier's check was counterfeit, the Bank paid him by mistake and is, therefore, relegated to the provisions of La. R.S. 10:3-418, which set forth, in relevant part:
(a) Except as provided in Subsection (c), if the drawee of a draft pays or accepts the draft and the drawee acted on the mistaken belief that ... the signature of the drawer of the draft was authorized, the drawee may recover the amount of the draft from the person to whom or for whose benefit payment was made or, in the case of acceptance, may revoke the acceptance. Rights of the drawee under this Subsection are not affected by failure of the drawee to exercise ordinary care in paying or accepting the draft. ...
(c) The remedies provided by Subsection (a) ... may not be asserted against a person who took the instrument in good faith and for value or who in good faith changed position in reliance on the payment or acceptance. This Subsection does not limit remedies provided by R.S. 10:3-417 [the presentment warranties] or 10:4-407 [the right to subrogation].
Urging that, pursuant to the uncontradicted assertions in his affidavit, he has established that he is a holder in due course, see La. R.S. 10:3-302, Lehman contends that under the provisions of La. R.S. 10:3-418(c), the Bank was not justified in debiting his home equity line of credit account.
Without addressing the issues of whether the Bank is entitled to assert recovery under the presentment warranties contained in La. R.S. 10:3-417 or whether the settlement made on March 17, 2003 was final as Lehman asserts, or provisional as the Bank claims, see La. R.S. 10:4-214, we conclude that under the transfer warranties set forth in La. R.S. 10:4-207, the Bank was justified in debiting Lehman's home equity line of credit account for $21,500 after it determined that the cashier's check was counterfeit.
Transfer warranties cannot be disclaimed with respect to checks. La. R.S. 10:4-207(d). Transfer warranties arise when a customer transfers an item and receives settlement or other consideration. See La. R.S. 10:4-207(a). Transfer occurs when an instrument is "delivered ... for the purpose of giving to the person receiving delivery the right to enforce the instrument." La. R.S. 10:3-203(a). Under this warranty, the warrantor guarantees, in part that (1) he is entitled to enforce the instrument; (2) all signatures on the instrument are authentic and authorized; and (3) the instrument has not been altered. La. R.S. 10:4-207(a). Parties to whom warranties are made under La. R.S. 10:4-207(a), and who take an instrument in good faith, may recover from the warrantor damages for breach of warranty in an amount equal to the loss suffered as a result of the breach plus expenses and loss of interest incurred as a result of the breach. La. R.S. 10:4-207(c).
Lehman has offered nothing to demonstrate that his actions were not a transfer or that the credit given to his home equity line of credit account after he negotiated the counterfeit cashier's check was not consideration under these circumstances. The check Lehman presented was neither authentic nor enforceable. And Lehman was "obliged to pay the amount due on the item," see La. R.S. 10:4-207(b), when he received monies and applied them to his home equity line account, regardless of whether the settlement of the cashier's check was provisional under La. R.S. 10:4-214 or, because it was ostensibly tendered in cash, final under La. R.S. 10:4-215.
We hold that Lehman made a transfer warranty to the Bank that cannot be disclaimed. See La. R.S. 10:4-207(d). He transferred the check when he delivered it to the Bank, regardless of whether he requested cash or the Bank treated it as a provisional settlement. Lehman received consideration when the Bank applied the proceeds of the purported cashier's check to his home equity line of credit account. And under La. R.S. 10:4-207(c), at a minimum, the Bank is entitled to "damages for breach of warranty [in] an amount equal to the loss suffered as a result of the breach." Thus, the Bank's debiting of Lehman's home equity line of credit account in the amount of $21,500, which was the amount of the counterfeit cashier's check that was credited to Lehman's account, was justified under the facts of this case. For these reasons, the trial court correctly granted summary judgment in favor of the Bank and denied that urged by Lehman.

DECREE
The trial court's judgment is affirmed. Appeal costs are assessed against plaintiff-appellant, Robert C. Lehman.
AFFIRMED.
DOWNING, J., dissents and assigns reasons
The majority errs in holding that Mr. Lehman "made a transfer warranty to [Bank One] that cannot be disclaimed." Since there was no "transfer" as defined in La. R.S. 10:3-203, no transfer warranties were made. This article provides, and the opinion recites, that, "an instrument is transferred when it is delivered by a person other than its issuer for the purpose of receiving the right to enforce the instrument." (Emphasis added.) Uniform Commercial Code Comment 1 to this article explains the concept of transfer and concludes with this sentence: "For example, if a check is presented for payment by delivering the check to the drawee, no transfer of the check to the drawee occurs because there is no intent to give the drawee the right to enforce the check." (Emphasis added.)
Here, Bank One is not the drawee (payor) (La. R.S. 10:4-105). But Mr. Lehrman thought it was, and the undisputed evidence filed in connection with the motions for summary judgment is that he presented the instrument for payment. Nothing suggests he intended to transfer the right to enforce the instrument. Critical here, though, is Mr. Lehman's purpose, or intent, when he sought payment of the instrument. Contrary to the statement in the majority opinion, Mr. Lehman's presentation of the instrument for payment demonstrates that his actions were not a transfer under Art. 10:3-203. Therefore, the La. R.S. 10:4-207 transfer warranties do not attach.
Additionally, it appears Mr. Lehman made no presentment warranties. Under La. R.S. 10:3-417A, presentment warranties attach only to an "unaccepted draft." La. R.S. 10:3-409A defines acceptance as follows:
"Acceptance" means the drawee's signed agreement to pay a draft as presented. It must be written on the draft and may consist of the drawee's signature alone. Acceptance may be made at any time and becomes effective when notification pursuant to instructions is given or the accepted draft is delivered for the purpose of giving rights on the acceptance to any person.
Here, Bank One stamped the back of the check and Mr. Lehman's equity line was credited. So it appears Bank One accepted the draft. Under La. R.S. 10:3-410, however, Bank One can vary the terms of the acceptance.
Nonetheless, a central question of fact precludes us from deciding whether Mr. Lehman varied the terms of its acceptance or whether Bank One's payment was final or provisional. In his second affidavit, Mr. Lehman asserts that he intended to be paid in cash and that the teller "advised [him] that the full cash payment had been applied to the outstanding loan balance." Bank One disputes the existence of a cash transaction. See La. R.S. 10:4-213 and La. R.S. 10:215.[1]
Accordingly, I would reverse the grant of summary judgment in favor of Bank One and remand for a trial on the merits. Both parties are apparently innocent, and the outcome of this case will depend on which facts a trier of fact believes.
NOTES
[1] Although a copy of the counterfeit cashier's check was placed into evidence, it is difficult to read, and the parties did not develop any details about its lack of authenticity except to suggest in argument that it was a very good replica of an original and that apparently it was the numbers referencing the account of another customer of the Bank that was the basis for ascertaining it was counterfeit.
[2] At oral arguments, Lehman admitted that because there was a line of customers behind him, he did not actually require the teller to give him $21,500 in cash.
[1] La. R.S. 10:4-215A(1) particularly provides that an item is finally paid when it is paid in cash.