13 So.3d 625 (2009)
Eugene G. GUARDIA
v.
LAKEVIEW REGIONAL MEDICAL CENTER and Nursing Staff of Lakeview Regional Medical Center.
No. 2008 CA 1369.
Court of Appeal of Louisiana, First Circuit.
May 8, 2009.
Rehearing Denied June 30, 2009.
*626 Rykert O. Toledano, Jr., Brian G. Meissner, Carter B. Wright, Ernest N. Souhlas, Covington, Louisiana, for Plaintiff/Appellant, Eugene G. Guardia.
Aldric C. Poirier, Jr., James W. Vitrano, Mandeville, Louisiana, for Defendant/Appellee, Lakeview Regional Medical Center, L.L.C.
Before WHIPPLE, GAIDRY, PARRO, McCLENDON, and WELCH, JJ.
McCLENDON, J.
The plaintiff, Eugene G. Guardia, appeals the judgment in favor of the defendant, Lakeview Medical Center, L.L.C, d/b/a Lakeview Regional Medical Center (Lakeview), granting Lakeview's motion for summary judgment. For the following reasons, we reverse and remand.

FACTS AND PROCEDURAL HISTORY
On March 17, 2003, Mr. Guardia was admitted to Lakeview for right and left knee arthroplasty, due to bilateral degenerative joint disease. Following bilateral knee replacement surgery, Mr. Guardia developed several complications, including lethargy and unconsciousness. He was admitted to the intensive care unit (ICU) on March 19, 2003. Mr. Guardia developed pressure ulcers and thereafter sacral decubitus, or skin breakdown, which eventually resolved.
*627 On April 14, 2005, after a medical review panel unanimously found no breach of the standard of care by Lakeview, Mr. Guardia filed a petition for damages against the hospital.[1] On November 28, 2007, Lakeview filed a motion for summary judgment asserting that Mr. Guardia was unable to meet his burden of proving his claim in that he had no expert to testify regarding medical causation between the alleged breach of the standard of care by Lakeview and his damages.[2] Lakeview had also filed a motion in limine to strike Julia B. Fields, RN, as an expert witness, asserting that she was not properly qualified to give expert testimony in the areas to which she was to be offered to testify at trial. Both matters were set for hearing on January 15, 2008, at which time the trial court granted Lakeview's motion for summary judgment and thereafter dismissed the motion to strike as moot. Judgment was signed on January 30, 2008, granting the summary judgment and dismissing Lakeview from the matter with prejudice. Mr. Guardia appealed.

DISCUSSION
In his assignments of error, Mr. Guardia contends that the trial court erred in granting summary judgment in favor of Lakeview and in denying his motion for rehearing and/or new trial. Specifically, Mr. Guardia argues that the affidavits and deposition testimony of his expert, Ms. Fields, were clearly sufficient to create genuine issues of material fact as to Lakeview's liability.
On appeal, summary judgments are reviewed de novo under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Duplantis v. Dillard's Dept. Store, 02-0852, p. 5 (La.App. 1 Cir. 5/9/03), 849 So.2d 675, 679, writ denied, 03-1620 (La.10/10/03), 855 So.2d 350. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Brumfield v. Gafford, 99-1712, p. 3 (La.App. 1 Cir. 9/22/00), 768 So.2d 223, 225. A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. Id., 99-1712 at pp. 3-4, 768 So.2d at 225; see LSA-C.C.P. art. 966 B.
The burden of proof is on the movant. But if the movant will not bear the burden of proof at the trial of the matter, the movant is not required to negate all essential elements of the adverse party's claim, but rather to point out an absence of factual support for one or more essential elements. Thereafter, if the adverse party fails to provide factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact, and summary judgment is properly granted. LSA-C.C.P. art. 966 C(2).
*628 In ruling on a motion for summary judgment, the trial court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. Hines v. Garrett, 04-0806, p. 1 (La.6/25/04), 876 So.2d 764, 765. Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor. Willis v. Medders, 00-2507, p. 2 (La.12/8/00), 775 So.2d 1049, 1050. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is "material" for summary judgment purposes can be seen only in light of the substantive law applicable to the case. Richard v. Hall, 03-1488, p. 5 (La.4/23/04), 874 So.2d 131, 137.
In a medical malpractice action against a physician, the plaintiff must establish by a preponderance of the evidence the applicable standard of care, a violation of that standard of care, and a causal connection between the alleged negligence and the plaintiffs injuries resulting therefrom. See LSA-R.S. 9:2794 A; Pfiffner v. Correa, 94-0924, 94-0963, 94-0992, p. 8 (La.10/17/94), 643 So.2d 1228, 1233; Fagan v. LeBlanc, 04-2743, p. 6 (La.App. 1 Cir. 2/10/06), 928 So.2d 571, 575. Likewise, in a medical malpractice action against a hospital, the plaintiff must prove that the hospital caused the injury when it breached its duty. Cangelosi v. Our Lady of the Lake Regional Medical Center, 564 So.2d 654, 661 (La.1989). Expert testimony is generally required to establish the applicable standard of care and whether or not that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony. Pfiffner, 94-0924 at pp. 9-10, 643 So.2d at 1234.
In support of its motion for summary judgment, Lakeview submitted a copy of the deposition of Ms. Fields and the affidavit of Dr. Scott M. Sondes. Lakeview asserts that Ms. Fields admitted in her deposition that she was unqualified to testify as to medical causation. Although Ms. Fields did state in her deposition that she could not give the medical cause for Mr. Guardia's pressure ulcers, she went on to state that, in her opinion, the most probable causes of Mr. Guardia's pressure ulcers were his supine position for two days and not being turned by the nurses. Further, Ms. Fields testified that as a nurse, she believed that the Lakeview nurses violated their standard of care in that they failed to turn Mr. Guardia every two hours following surgery, especially considering that he was a high-risk patient. Ms. Fields stated that nowhere in the nurses' notes was it documented that the nurses ever changed Mr. Guardia's position before he was moved to the ICU.
In his affidavit, Dr. Sondes, the director of rehabilitation and wound management services at Regency Hospital in Covington, stated that he reviewed the medical records of Mr. Guardia. Mr. Guardia lost a significant amount of blood as a normal course of his bilateral knee surgery on March 17, 2003, but he is a Jehovah's Witness and did not accept blood transfusions or blood products because of his religious beliefs. On March 18, 2003, Mr. Guardia became responsive only to pain and was noted to have extremely low blood pressure and significant postoperative anemia. As a result of his hypovolemia (an abnormal decrease in blood volume), Mr. Guardia went into hypovolemic shock and acute renal failure. Being on Coumadin, a commonly used blood thinner, Mr. Guardia also developed coagulopathy. As a result, *629 Mr. Guardia developed pressure ulcers on the occiput and on the gluteal areas bilaterally. Mr. Guardia received wound care from the physical therapy department while at Lakeview and by in-office visits and home health care upon his discharge. Dr. Sondes further stated:
In Affiant's expert medical opinion, Mr. Guardia's wounds were expected and unpreventable. These wounds were expected and unpreventable due to the chain of events that occurred during Mr. Guardia's hospital stay. Specifically, Mr. Guardia suffered from severe hypovolemic shock resulting in acute renal failure. This, combined with severe postoperative anemia, resulted in multiple physiologic responses designed to preserve internal organ function and ultimately preserve Mr. Guardia's life.
After explaining the body's responses in a situation such as Mr. Guardia's, Dr. Sondes concluded that there was very little chance that Mr. Guardia would not have developed pressure ulcer complications. He opined that Mr. Guardia would have, more probably than not, developed pressure-ulcer breakdown regardless of any action by Lakeview, and there was little, if any, intervention that would have prevented the formation of the pressure ulcers. It was Dr. Sondes' opinion that the nurses and staff of Lakeview met the standard of care in their care of Mr. Guardia.
In response, Mr. Guardia filed an opposition to the motion for summary judgment, attaching an affidavit of Ms. Fields,[3] a copy of the National Pressure Ulcer Prevention Advisory Panel's summary regarding pressure ulcer prevention points, and the position statement of the American Association of Legal Nurse Consultants regarding expert nursing testimony. In her affidavit, Ms. Fields stated that she reviewed the affidavit of Dr. Sondes. She further stated that the issue at hand is a nursing issue and that the nursing staff at Lakeview failed to timely and accurately assess Mr. Guardia's skin integrity. Further, she stressed that Mr. Guardia was not repositioned even once during the first 24 hours following surgery, according to the nursing documentation. Ms. Fields pointed out the statement of the National Pressure Ulcer Prevention Advisory Panel that bed-bound patients be repositioned every two hours and that a written repositioning schedule be used. Further, Ms. Fields noted Lakeview's Nursing Policy P-5 titled "Post-Operative Care," which specifically states: "2. Assessment status to include but not limited to: (h) skin color and condition and 3. Note doctor's orders and follow as documented to include but not limited to: (a) cough, turn and deep breathe every 2h x 24 hr. Change position frequently." Ms. Fields concluded:
Since the issues of earlier detection, such as routine skin assessments, or preventative measures, such as turning Mr. Guardia, were not addressed in his first two postoperative days, it can be reasonably concluded that they were causative factors to his impaired skin integrity. It is still my opinion that the nursing staff of Lakeview Regional Medical Center did deviate from the nursing standards of care by NOT assessing or maintaining skin integrity in a postoperative, bed bound patient who became at higher risk for developing decubitus ulcers after complications from his surgery.
*630 We agree that expert testimony was required in this matter. This is not a case where the alleged negligence is similar to a physician's leaving a sponge in a patient's body or the amputation of the wrong leg. Mr. Guardia claims that his injuries were caused by the failure of the nursing staff to assess his skin condition and regularly change his position for the first two days following his surgery. The connection between this failure and his injuries in circumstances involving a complex medical condition is beyond the province of lay persons to assess. Therefore, once the burden shifted to Mr. Guardia to produce evidence demonstrating genuine issues of material facts, he needed to establish through expert testimony that given his medical history and condition, Lakeview breached a specified standard of care and that this breach caused his injuries.
Mr. Guardia contends that he sufficiently did so with the affidavit and deposition testimony of Ms. Fields, thereby establishing a genuine issue of material fact. However, Lakeview filed a motion in limine to strike the expert testimony of Ms. Fields, in which it argued that Ms. Fields did not meet the criteria for admission of her testimony.
The admissibility of expert testimony in Louisiana is governed by LSA-C.E. art. 702, which provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." The Daubert standard,[4] which was adopted by the Louisiana Supreme Court in State v. Foret, 628 So.2d 1116, 1123 (La.1993), requires that expert scientific testimony must rise to a threshold level of reliability in order to be admissible under LSA-C.E. art. 702. Terrebonne v. B & J Martin, Inc., 03-2658, p. 10 (La.App. 1 Cir. 10/29/04), 906 So.2d 431, 440.
In Daubert, the United States Supreme Court set a new standard to assist trial courts in evaluating the admissibility of expert testimony and required the district courts to perform a "gatekeeping" function to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert, 509 U.S. at 589, 113 S.Ct. at 2795. In Kumho Tire Company, Ltd. v. Carmichael, 526 U.S. 137, 147, 119 S.Ct. 1167, 1174, 143 L.Ed.2d 238 (1999), the United States Supreme Court held that the analysis established by Daubert is to be applied to determine the admissibility of all expert testimony, not just scientific testimony. Cheairs v. State ex rel. Department of Transp. and Development, 03-0680, p. 7 (La.12/3/03), 861 So.2d 536, 541. However, the decision in Daubert concerned the admissibility of the expert's opinion based on methodology used and not on his or her qualification as an expert in the area tendered, which was the issue raised in Cheairs and is the same issue raised herein.
Thus, the court in Cheairs adopted a three-prong inquiry to give trial courts more comprehensive guidance in determining the admissibility of expert testimony. The admission of expert testimony is proper only if: (1) the proposed expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated *631 in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. Cheairs, 03-0680 at p. 9, 861 So.2d at 542. As explained in Cheairs, these factors are reflective of the considerations under LSA-C.E. art. 702 and whether the admissibility of the expert testimony would assist the trier of fact to understand the evidence or to determine a fact in issue. The court also recognized that experience alone is normally sufficient to qualify a witness as an expert. Cheairs, 03-0680 at p. 8, 861 So.2d at 541-42.
In this matter, in filing its motion in limine to strike the testimony of Ms. Fields, Lakeview asserted that Ms. Fields was unable to satisfy the three-prong test adopted in Cheairs and therefore was not qualified to render an expert opinion in the areas about which she was to testify at trial. The motion was set for hearing at the same time as the motion for summary judgment. The parties argued the motion for summary judgment, which was granted by the trial court. However, the trial court did so without holding a hearing on the motion in limine.[5]
We conclude that it was legal error for the trial court to fail to consider and to disregard Ms. Field's testimony without first conducting a hearing to determine if her testimony constituted reliable expert testimony as contemplated in Cheairs. Although the trial court, in ruling on the motion for summary judgment, stated that Ms. Fields was not qualified to testify regarding the issue of causation, her testimony was excluded without a hearing and without any evaluation or analysis of the relevant factors to be considered in determining the admissibility of expert testimony.[6] Accordingly, we conclude that summary judgment was premature and therefore improper.

CONCLUSION
For the foregoing reasons, the summary judgment appealed from is reversed, and the matter is remanded for further proceedings consistent with this opinion. Costs of this appeal shall be shared equally by the parties.
REVERSED AND REMANDED.
WELCH J. dissents and assigns reasons.
WELCH, J., dissenting.
I believe the trial court correctly granted summary judgment in this case, and therefore, I respectfully dissent.
To satisfy his burden on the medical causation issue, Mr. Guardia was required to prove more probable than not that his injuries were caused by the nurses' failure to regularly change his position during the first two post-operative days. The majority correctly observes that expert testimony was necessary on the issue of medical causation. It is well-settled that when a conclusion regarding medical causation is not one within common knowledge, expert medical testimony is required to prove or disprove causation. Hutchinson v. Shah, 94-0264, p. 3 (La.App. 1st Cir.12/22/94), *632 648 So.2d 451, 452, writ denied, 95-0541 (La.4/21/95), 653 So.2d 570.
In support of its motion for summary judgment, Lakeview pointed out that plaintiff lacked sufficient expert testimony on the issue of medical causation. Further, mover offered medical evidence to disprove causation through the affidavit of Dr. Scott Sondes, the director of rehabilitation and wound management services at Regency Hospital. Dr. Sondes noted that in the normal course of his surgery, Mr. Guardia lost a significant amount of blood and for religious reasons did not accept blood transfusions or blood products. One day following the surgery, Mr. Guardia had extremely low blood pressure and significant postoperative anemia. As a result, Dr. Sondes explained, Mr. Guardia went into hypovolemic shock and acute renal failure, and also developed a coagulopathy as a result of taking a blood thinner. Dr. Sondes opined that Mr. Guardia's complex medical condition caused the formation of pressure ulcers. He noted that the body typically responds to hypovolemia by shunting of blood away from peripheral tissues to maintain blood flow to the major organs, which put Mr. Guardia's skin at great risk for breakdown in all tissues, not just those exposed to pressure. In addition, Mr. Guardia's coagulopathy inhibited his clotting ability, which made his body unable to control the progression of damage and made the pressure ulcers worse, while the severe anemia added to the development of Mr. Guardia's pressure ulcers by reducing the body's ability to carry oxygen to the peripheral tissues. Dr. Sondes ultimately concluded that Mr. Guardia's wounds were expected and unpreventable due to Mr. Guardia's complex medical condition. Specifically, the doctor observed that because Mr. Guardia was suffering from hypovolemic shock causing acute renal failure combined with severe postoperative anemia, Mr. Guardia's body underwent physiological responses designed to preserve internal organ function and preserve his life. Dr. Sondes opined that more probably than not, Mr. Guardia would have developed pressure ulcer breakdown regardless of any action taken by Lakeview and there was little, if any, intervention that would have prevented the formation of the pressure ulcers.
Once Lakeview pointed out plaintiffs absence of factual support on the issue of medical causation, in addition to introducing expert opinion disapproving medical causation, the burden shifted to Mr. Guardia to provide factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. Thus, it was incumbent on Mr. Guardia to offer expert medical testimony that the failure of the nurses to reposition him, rather than his complex medical condition, caused the pressure ulcers. In an attempt to satisfy this burden, plaintiff offered the deposition testimony and affidavit of Ms. Fields, a nurse. However, Ms. Fields acknowledged in her deposition that she is not qualified to give an expert opinion on the medical cause of plaintiffs pressure ulcers. In light of this admission, it is undisputed that Ms. Fields was not qualified to render a medical opinion on medical causation. Accordingly, Mr. Guardia did not satisfy his burden of offering expert evidence sufficient to establish that he would be able to prove at trial more probably than not that the nurses' substandard care caused his injuries.
For these reasons, I conclude the trial court correctly granted Lakeview's motion for summary judgment, and I would affirm that ruling.
NOTES
[1] In his petition, Mr. Guardia named as defendants Lakeview and the nursing staff at Lakeview. Lakeview subsequently stipulated that it would accept responsibility for any negligent acts or omissions of its employees relative to the treatment of Mr. Guardia at issue herein.
[2] A previous motion for summary judgment was filed by Lakeview on June 5, 2006, but the record does not show that it was ever ruled upon.
[3] This affidavit, dated January 11, 2008, is the second affidavit of Ms. Fields in this matter. The first affidavit, dated June 17, 2006, was submitted by Mr. Guardia in opposition to Lakeview's first motion for summary judgment and again in opposition to Lakeview's motion to strike.
[4] Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).
[5] When counsel for Lakeview mentioned the motion in limine, the trial court ordered that it be dismissed as moot.
[6] We note that LSA-C.E. art. 104 A provides, in pertinent part, that "[p]reliminary questions concerning the competency or qualification of a person to be a witness . . . shall be determined by the court. . . ." Additionally, by Acts 2008, No. 787, § 1, eff. Jan. 1, 2009, LSA-C.C.P. art. 1425 was amended to add Paragraph F to provide for a pretrial hearing regarding the qualifications and admissibility of testimony of an expert witness.