McClendon, j.
12Instant Replay Sports, Inc. (Instant Replay) and Charles Orzehoskie (Orzeho-skie) appeal a trial court’s judgment granting summary judgment in favor of Allstate Insurance Company (Allstate) and denying their corollary motion for partial summary judgment. For the following reasons, we reverse the trial court’s judgment granting Allstate’s motion, render judgment granting plaintiffs’ corollary motion for partial summary judgment, and remand this matter to the trial court for a determination of the amount of penalties due pursuant to LSA-R.S. 22:1973 C.
FACTS AND PROCEDURAL HISTORY
Instant Replay and Mr. Orzehoskie filed the instant suit in August 2006 to resolve an insurance dispute that arose out of Hurricane Katrina. At the time of Hurricane Katrina, Instant Replay’s property in Slidell, Louisiana was insured under an Allstate Business Customizer Insurance Policy. Plaintiffs named Allstate, among others, as defendants.[1]
On September 11, 2009, following a two-day mediation, the parties reached a settlement agreement. The parties executed a one-page agreement, which set forth certain terms, including the deadline for payment, the number of checks to be issued, and the amount and the name of the payee on each of the checks. The parties, cognizant of a lien filed by the Small Business Administration (SBA), also recognized that plaintiffs would be solely responsible for any amounts due the SBA. The agreement provided:
The defendant(s) will pay the full amount of $2 million dollars ... to the plaintiff(s). Said payment will be made within 30 days from today. It is understood and agreed that, except as provided below, all liens or interventions for medical expenses, compensation payments or otherwise will be paid and satisfied by the plaintiffis), including but not limited to all requirements under the law to satisfy the lien or rights of the [SBA].
* * ⅜
|3The parties will draft a settlement and release agreement to be signed by all parties.
Payments will be made in the following manner:
1) Check to Instant Replay for $311,000 for contents due to wind
*854 2) Check to Instant Replay for $245,000 for loss of income
3) [Check] to Instant Replay for $444,000 for contents due to looting
4) Check to Charles Orzehoskie for [$1,000,000] for damages due to personal injuries
On September 24, 2009, Allstate sent plaintiffs’ counsel a draft Receipt and Release Agreement. The draft agreement indicated that, in addition to the check for personal injuries to Mr. Orzehoskie, Allstate would issue three checks jointly payable to the SBA and Instant Replay in the amounts of $311,000.00, $245,000.00, and $444,000.00, respectively.[2]
Thereafter, Allstate prepared four settlement checks — three to Instant Replay and one to Orzehoskie, which included the SBA as an additional payee on each of the checks. Plaintiffs rejected the checks because the SBA had been included as a payee. Plaintiffs requested Allstate remove the SBA as payee and that new checks be forwarded overnight.
Later that day, Allstate received a letter from the SBA indicating that “payment of ... $75,900 fully satisfies any liens the SBA may have against Allstate ... for any proceeds paid to Instant Replay out of the million dollar assignment proceeds.” Thereafter, on October 9, 2009, Allstate prepared six checks — one made payable to the SBA and Instant Replay jointly in the amount of $75,900, four made payable to Instant Replay,[3] and one made payable to Mr. Orzehoskie. Allstate removed the SBA as a payee on the checks made payable to Instant Replay and Mr. Orzeho-skie. On October 12, 2009, Allstate’s counsel e-mailed the face of the checks notifying plaintiffs’ counsel that the checks were ready for delivery, but did not deliver said checks until October 28, 2009. Mr. Orzehoskie, however, expressed concern regarding the manner in which the settlement check j4was made payable for his personal injuries and the possible tax consequences arising therefrom.
On October 13, 2009, plaintiffs filed a “Motion for Summary Hearing and to Enforce Settlement Agreement and For Damages and Penalties.” Therein, plaintiffs sought an award of damages and penalties pursuant to LSA-R.S. 22:1973 “for the defendants^] failure to pay the settlement within thirty days.”
At a hearing on the motion to enforce the settlement agreement held on October 28, 2009, the trial court, after considering Mr. Orzehoskie’s concerns with regards to the settlement check related to his personal injuries, instructed Allstate to delete the reference to “loss of income” and to name Mr. Orzehoskie as the claimant on the check. In accordance with the trial court’s instruction, Allstate reissued Mr. Orzeho-skie’s check and indicated thereon that the check was “in payment of damages due to personal injury” and was forwarded to plaintiffs on October 29, 2009.[4]
On October 30, 2009, plaintiffs rejected the check related to Mr. Orzehoskie’s personal injury claims because Mr. Orzeho-skie was not listed as a “claimant” on the check. Allstate subsequently issued a new *855 check with Mr. Orzehoskie listed as the “claimant” on November 2, 2009, and delivered it to Mr. Orzehoskie’s counsel on November 3, 2009. Thereafter, on November 13, 2009, the parties executed a Mutual Confidential Receipt, Release and Settlement Agreement.
On July 12, 2010, plaintiffs filed a motion for partial summary judgment and for declaratory judgment against Allstate, asserting that Allstate failed to pay the settlement within thirty days and was responsible for penalties pursuant to LSA-R.S. 22:1973. Plaintiffs also sought a declaratory judgment regarding the manner of calculating the penalty under LSA-R.S. 22:1973 C. On July 15, 2010, Allstate, asserting that it paid the settlement sums in accordance with LSA-R.S. |522:1973, filed a motion for summary judgment seeking dismissal of plaintiffs’ claims.
On October 13, 2010, the trial court heard argument on both parties’ motions. The trial court indicated that “[ujnder the scenario of the case I do not feel there has been a violation under the statute in bad faith on the part of Allstate after [its] delivery of the cheeks within the thirty (30) days....”[5] Accordingly, the trial court signed a judgment on November 16, 2010, granting Allstate’s motion for summary judgment, and denying plaintiffs’ motions for partial summary judgment and declaratory judgment. On November 24, 2010, plaintiffs filed a motion for new trial, which the trial court denied on February 8, 2011.
Plaintiffs have appealed, seeking review of the trial court’s grant of Allstate’s motion for summary judgment and the corollary denial of their motion for partial summary judgment. The plaintiffs also seek review of the trial court’s failure to address their claims for declaratory judgment regarding the manner of calculating the penalty under LSA-R.S. 22:1973 C.
DISCUSSION
A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine issue of material fact. Gonzales v. Kissner, OS-2154, p. 4 (La.App. 1 Cir. 9/11/09), 24 So.3d 214, 217. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966 B. Summary judgment is favored and is designed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966 A(2); Aucoin v. Rochel, 08-1180, p. 5 (La.App. 1 Cir. 12/23/08), 5 So.3d 197, 200, writ denied, 09-0122 (La.3/27/09), 5 So.3d 143.
In determining whether summary judgment is appropriate, appellate courts review the matter de novo under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. Boudreaux v. Vankerkhove, 07-2555, p. 5 (La.App. 1 Cir. 8/11/08), 993 So.2d 725, 729-30. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover-appellant is entitled to judgment as a matter of law. Ernest v. Petroleum Service Corp., 02-2482, *856 p. 3 (La.App. 1 Cir. 11/19/03), 868 So.2d 96, 97, writ denied, 03-3439 (La.2/20/04), 866 So.2d 830.
In ruling on a motion for summary judgment, the trial court’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. Guardia v. Lakeview Regional Medical Center, OS-1369, p. 3 (La.App. 1 Cir. 5/8/09), 13 So.3d 625, 628. A trial court cannot make credibility decisions on a motion for summary judgment. Monterrey Center, LLC v. Education Partners, Inc., 08-0734, p. 10 (La.App. 1 Cir. 12/23/08), 5 So.3d 225, 232. In deciding a motion for summary judgment, the trial court must assume that all of the witnesses are credible. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, pp. 16-17 (La.2/29/00), 755 So.2d 226, 236. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to this case. Guardia, 08-1369 at 4, 13 So.3d at 628.
Louisiana Revised Statutes 22:1973 provides, in pertinent part:
A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
|7B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer’s duties imposed in Subsection A:
[[Image here]]
(2) Failing to pay a settlement within thirty days after an agreement is reduced to writing.
[[Image here]]
C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.
Statutes governing penalties for an insurer’s failure to timely pay an insured’s claims are penal in nature and must be strictly construed. Reed v. State Farm Mut. Auto. Ins. Co., 03-0107, p. 13 (La.10/21/03), 857 So.2d 1012, 1020. In order to recover under the statute as a result of an insurer’s failure to pay a settlement within thirty days, a party need not show that the insurer acted in a way that is “arbitrary, capricious, or without probable cause.” Sultana Corp. v. Jewelers Mut. Ins. Co., 03-0360, p. 9 (La.12/3/03), 860 So.2d 1112, 1119. Rather, LSA-R.S. 22:1973 B requires only that the insured or claimant show that the failure of an insurer to timely pay the settlement be “knowingly committed.” Id.
The parties dispute when the thirty-day delay began to run. Plaintiffs contend that the delay began to run after the parties entered into the written agreement on September 11, 2009, and that Allstate was required to pay the settlement funds by October 11, 2009. On the other hand, Allstate contends because the September 11, 2009 agreement contemplated a more detailed settlement and release agreement, *857 the thirty-day period did not begin to run until the date the parties executed the latter agreement on November 13, 2009.
We note that written agreements following mediation are binding compromises even if those agreements contemplate the later creation of more |8detailed receipt and releases. See LeBlanc v. State Farm Ins. Co., 03-1522 (La.App. 3 Cir. 5/26/04), 878 So.2d 715, writ not considered, 04-1642 (La.10/8/04), 883 So.2d 1023 and Walk Haydel & Assoc. v. Coastal Power Prod. Co., 98-0193 (La.App. 4 Cir. 9/30/98), 720 So.2d 372. Those cases, however, do not address penalties arising from a party’s failure to pay the settlement within thirty days of the mediation agreement.
Allstate avers that the fourth circuit addressed this specific issue in Smith v. Bambino, 10-1174 (La.App. 4 Cir. 3/18/11), 62 So.3d 255. Therein, the parties entered into a “Memorandum of Settlement Agreement” following a mediation wherein the parties “acknowledge and agree that, within a reasonable period of time hereafter they will enter into a formal settlement agreement, setting forth in more detail the terms of the agreement....” Smith, 10-1174 at p. 2, 62 So.3d at 257. The fourth circuit noted that there “can be no doubt that another writing was contemplated,” and in apparent dicta, found “as a matter of law that, at the very least, the 30-day delay contemplated by La. R.S. 22:1973 B(2) would not begin to run until the final settlement agreement was confected or until the expiration of ‘reasonable period of time’ for the confection of a ‘formal settlement agreement’ contemplated by the language of the mediation agreement.” Id.
Allstate points out that the written mediation agreement at issue in this case also required the parties to draft a settlement and release agreement. Even so, while we recognize that the mediation agreement contemplated that the parties would draft a settlement and release agreement, the parties’ September 11, 2009 agreement also provided that payment “will be made within 30 days from today.” Further, unlike Smith, this agreement was not labeled a “Memorandum of Settlement Agreement” and the parties did not reference a formal settlement agreement to be entered into in the future. Further, the agreement herein was very specific as to the amounts of the checks, to whom the checks were payable, and the assumption of the SBA loan by the plaintiffs. Moreover, the parties’ agreement provided that payment would be made within |930 days of the date they signed the mediation agreement. Having found that the parties had reached a written settlement agreement setting forth the terms of payment along with a deadline for payment that coincided with the delays provided in LSA-R.S. 22:1973 B(2), it is clear that the 30-day period began to run from the date of the September 11, 2009 agreement.
Nevertheless, Allstate contends that the checks it delivered on October 8, 2011, prior to the 30-day deadline, were timely. Allstate avers that it included the SBA as a payee on the checks because it had not received written confirmation from the plaintiffs or the SBA regarding the SBA’s interest in the settlement funds. Allstate asserts that the checks were issued in this manner to protect the SBA’s interest and in order to comply with the requirements of LSA-R.S. 22:1973 B(2). Further, after receiving written notice of the lien on October 9, 2009, Allstate notes that it issued new checks on October 9, 2009, removing the SBA as a payee.
In contrast, plaintiffs assert that while Allstate provided settlement checks on October 8, 2009, the checks were not written out as specifically set out in the September 11, 2009 agreement because the SBA was *858 included as a payee. Plaintiffs contend that they would have never agreed to the settlement if Allstate had indicated that the SBA would be a payee on the checks due to the uncertainty of the amount of time that would have been required to negotiate the checks and the immediate need for the funds. Specifically, in an affidavit submitted in opposition to Allstate’s motion, Mr. Orzehoskie attested that “knowledge of the SBA is precisely why he agreed in the written settlement agreement that he personally and the corporation would be solely responsible for the liens of the SBA.” Moreover, Mr. Orzehoskie attested that “the timing was critical to some investments that he personally and the corporation wanted to make at the time.” Similarly, plaintiffs’ counsel, who submitted an affidavit in opposition to Allstate’s motion, indicated that he participated in drafting the September 11, 2009 agreement and that the plaintiffs “expected the settlement to proceed exactly as set out in the Mediation Settlement Agreement.” Plaintiffs |inalso assert that the checks dated October 9, which did not include the SBA as a payee, were not delivered timely within the 30-day deadline.
There are no genuine issues of material fact as to whether Allstate failed to comply with the deadline set forth in LSA-R.S. 22:1973 B(2). We note that the agreement signed by the parties on September 11, 2009, required Allstate to issue, within 30 days, three checks payable to Instant Replay and one check payable to Mr. Orzeho-skie. The agreement further provided that it was plaintiffs’ responsibility to satisfy all hens filed, specifically including the lien filed by the SBA. Although Allstate posits that it was protecting itself and the SBA by recognizing the SBA’s lien rights, the language of the settlement agreement specifically indicated to whom each of the checks were to be written and that plaintiffs would satisfy the SBA lien.[6] Cf. Nolan v. Audubon Ins. Group, 10-1362 (La.App. 3 Cir. 3/9/11), 59 So.3d 487, writ denied, 11-0987 (La.6/24/11) 64 So.3d 218, wherein a settlement check issued to plaintiffs and including mortagees as payees sent within 30 days of settlement agreement complied with LSA-R.S. 22:1973 B(2), but there was no indication that the settlement agreement therein identified the specific payee on the check.
Moreover, after being notified of the amount of the SBA lien within the 30-day deadline, Allstate issued new checks on October 9, 2009 and removed the SBA as a payee; however, the checks were not forwarded to plaintiffs until October 28 and 29, 2009. Because the payments were not made in accordance with the terms of the settlement agreement within 30 days, we conclude as a matter of law that Allstate violated LSA-R.S. 22:1973 B(2). Accordingly, the trial court erred in granting Allstate’s motion for summary judgment and in denying plaintiffs’ motion for partial summary judgment.
Although plaintiffs request that this court set the penalty pursuant to LSA-R.S. 22:1973 C, we note that such is within the province of the trial court. Additionally, the record does not contain the sufficient facts from which to make | nthat determination in accordance with Oubre v. Louisiana Citizens Fair Plan, 11-0097 (La.12/16/11), 79 So.3d 987. Accordingly, we pretermit discussion of this issue.
CONCLUSION
For the foregoing reasons, we reverse the judgment of the trial court granting Allstate’s motion for summary judgment *859 and render judgment granting plaintiffs’ motion for partial summary judgment. We also remand this matter to the trial court for further proceedings, including assessment of penalties under LSA-R.S. 22:1973 C in accordance with Oubre v. Louisiana Citizens Fair Plan, 11-0097 (La.12/16/11) 79 So.3d 987. Costs of this appeal are assessed to the appellee, Allstate Insurance Company.
REVERSED AND REMANDED.
WELCH, J., dissents and assigns reasons.

. Also named defendants were Don Adoue, plaintiff's insurance agent; Wilbur Jordan, an Allstate adjuster; Elsie Callaway, the initial adjuster that adjusted the claim; and Pilot Catastrophe Services, Inc., Elsie Callaway’s employer.

. Upon receipt, plaintiffs’ counsel requested that Allstate not issue the settlement checks as indicated, noting that the SBA had verbally informed them of the amounts the SBA sought.

. Four checks, as opposed to three, were issued to Instant Replay because a check for damage due to looting in the amount of $400,000.00 and a check for loss due to looting in the amount of $44,000.00 were issued separately.

.The five other checks prepared on October 9, 2009, were forwarded to plaintiffs on October 28, 2009.

. We note that the trial court may have erroneously required that the insurer be in bad faith in order for a violation of LSA-R.S. 22:1973 B(2) to occur. However, appeals are taken from judgments and not the reasons for judgment. See Huang v. Louisiana State Bd. of Trustees for State Colleges and Universities, 99-2805, p. 5 (La.App. 1 Cir. 12/22/00), 781 So.2d 1, 6. Further, we conduct a de novo review on summary judgment.

. We make no comment as to whether the result would have been difference had the settlement agreement not provided that plaintiffs would be responsible for satisfying the SBA lien.