KUHN, J.
|2In this medical malpractice case, the plaintiffs, Steve L. Jackson and Debbie A. Crawford, appeal a summary judgment dismissing their claims against defendants, Dr. Herminio Suazo-Vasquez (Dr. Suazo) and Bio-Medical Applications of Louisiana, LLC, (BMA), with prejudice. For the following reasons, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On November 4, 2008, Ora Jackson Johnson, a seventy-four year old female confined to a wheelchair, received her regularly scheduled dialysis treatment at BMA in Houma, Louisiana. Her blood pressure was extremely elevated, but had improved by the end of treatment. It was 186/84 upon completion of her dialysis.
Under BMA’s protocol, a patient whose blood pressure exceeds 190/110 is not permitted to leave the premises. Since Ms. Johnson’s blood pressure did not meet this criteria, she was put on the Council on Aging van that provided her with transportation home. BMA staff notified Dr. Suazo, a nephrologist, of Ms. Johnson’s elevated blood pressure. After having staff verify her medications, he ordered an adjustment in the medication Ms. Johnson was to take later that day.
Plaintiffs gave conflicting accounts of what occurred when the van arrived at Ms. Johnson’s home. In answer to two different sets of interrogatories propounded by defendants, they stated that Ms. Johnson’s son took her off the van and brought her inside, “sat her at a table, whereupon she asked one question, ‘jerked’, became non-responsive and without a pulse.” However, in the affidavits Mr. Johnson’s son, Mr. Jackson, and daughter, Ms. Crawford, filed in opposition to defendants’ motion for summary judgment, they asserted that Ms. Johnson was non-responsive when the van arrived. In any event, they called 911 and Ms. Johnson was transported to 13the hospital by ambulance. She died on November 10, 2008, without regaining consciousness.
Subsequently, after a medical review panel unanimously found no breach of the applicable standard of care by either Dr. Suazo or BMA, Mr. Jackson and Ms. Crawford filed suit, individually and on behalf of their mother’s estate, against Dr. Suazo and BMA, claiming damages for them mother’s lost chance of survival and for her wrongful death. After filing re *775 sponsive pleadings, defendants eventually filed a motion for summary judgment. Defendants asserted therein that plaintiffs could not meet their burden of proof because they had no admissible expert evidence to establish either that a breach of the applicable standards of care occurred or that medical causation existed between the alleged breaches of care and the damages claimed. In support of the motion, defendants filed the affidavits of a board-certified internist and a board-certified ne-phrologist, who each stated their professional opinion that: (1) Dr. Suazo and BMA staff met the appropriate standard of care in treating Ms. Johnson; and (2) Ms. Johnson suffered a massive stroke that was not preventable under the circumstances.
Dr. Sauzo also filed a motion to strike the affidavit of Patrie Roby Washington, which he anticipated plaintiffs would offer in opposition to the motion for summary judgment. Defendants alleged that Ms. Washington, a registered nurse, was not competent to testify either as to the standard of care applicable to a nephrologist or as to medical causation. In fact, plaintiffs later offered an affidavit from Ms. Washington in which she opined on the issues noted in the motion to strike.
The district court heard both defense motions on the same date. It denied the motion to strike, ruling that, as a registered nurse, Ms. Washington was qualified to opine on the standard of care applicable to BMA’s nursing staff. However, the court ^further ruled that Ms. Washington was not competent to testify either as to the standard of care applicable to Dr. Sua-zo as a nephrologist or as to the cause of Ms. Johnson’s death. On that basis, the district court concluded that plaintiffs offered no “admissible expert medical testimony” to contradict the opinions of defendants’ experts that Dr. Suazo did not breach the applicable standard of care and that Ms. Johnson died as the result of “a massive stroke that was not preventable.” Accordingly, the district court granted summary judgment in favor of defendants and dismissed plaintiffs’ suit with prejudice. Plaintiffs now appeal.

SUMMARY JUDGMENT LAW

On appeal, summary judgments are reviewed de novo under the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Duplantis v. Dillard’s Department Store, 02-0852 (La.App. 1st Cir.5/9/03), 849 So.2d 675, 679, writ denied, 03-1620 (La.10/10/03), 855 So.2d 350. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B)(2); Brumfield v. Gafford, 99-1712 (La.App. 1st Cir. 9/22/00), 768 So.2d 223, 225.
The burden of proof is on the movant. However, if the movant will not bear the burden of proof at the trial of the matter, the movant is not required to negate all essential elements of the adverse party’s claim, but rather to point out an absence of factual support for one or more essential elements. Thereafter, if the adverse party fails to provide factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact, and summary judgment is properly granted. La. C.C.P. art. 966(C)(2); Brumfield, 768 So.2d at 225.
iJn ruling on a motion for summary judgment, the trial court’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a *776 genuine issue of triable fact. Hines v. Garrett, 04-0806 (La.6/25/04), 876 So.2d 764, 765 (per curiam). Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is “material” for summary judgment purposes can be seen only in light of the substantive law applicable to the case. Richard v. Hall, 03-1488 (La.4/23/04), 874 So.2d 131, 137.

DISCUSSION

On appeal, plaintiffs argue that the district court erred by not accepting their statement of uncontested facts as being proven since those facts were unchallenged and in not finding that there were multiple issues of material fact concerning whether Dr. Suazo and BMA breached the applicable standard of care. Plaintiffs allege that defendants’ failure to immediately send Ms. Johnson to a hospital emergency room and/or failure to address her extremely high blood pressure was a case of obvious negligence that deprived her of a chance of survival and/or caused her death. They contend that the district court erred both in finding that expert testimony was required on the issue of whether defendants’ actions reduced Ms. Johnson’s chance of survival and in finding that Ms. Washington was not qualified to render an expert opinion on this issue. Additionally, plaintiffs assert the district court should have disregarded the affidavits of defendants’ experts because they were based on erroneous facts and were not reliable. Plaintiffs further allege that defendants’ experts based their opinions on Ms. Johnson’s condition as it existed at the hospital on November 10, 2008, the date of her death, rather than on her condition from the time just before she was discharged from BMA on November 4, 2008, until her arrival at the hospital that afternoon.
lfiIn a medical malpractice action, the plaintiff must establish by a preponderance of the evidence the applicable standard of care, a violation of that standard of care, and a causal connection between the alleged negligence and the plaintiffs injuries resulting therefrom (i.e., medical causation). See La. R.S. 9:2794(A); Pfiffner v. Correa, 94-0924, 94-0963, 94-0992 (La.10/17/94), 643 So.2d 1228, 1233; Fagan v. LeBlanc, 04-2743 (La.App. 1st Cir.2/10/06), 928 So.2d 571, 575. Generally, expert testimony is required to establish the applicable standard of care and whether or not that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony. Pfiffner, 643 So.2d at 1233-34. Further, except for cases where the causal connection between a defendant’s fault and the injury alleged is obvious, expert medical testimony is also necessary to establish causation. See Pfiffner, 643 So.2d at 1234; see also Hutchinson v. Shah, 94-0264 (La.App. 1st Cir.12/22/94), 648 So.2d 451, 452, writ denied, 95-0541 (La.4/21/95), 653 So.2d 570. Normally, in cases involving patients with complicated medical histories and complex medical conditions, causation is simply beyond the province of lay persons to assess. See Pfiffner, 643 So.2d at 1234.
In support of their motion for summary judgment, defendants presented the unanimous opinion of the medical review panel, which concluded there was no deviation from the applicable standard of care by Dr. Suazo or BMA. Defendant also presented the affidavits of Drs. Robert Occhi-pinti, M.D., an internist, and Lotuce Hamm, M.D., an internist and nephrologist, stating their expert opinions that defendants did not breach the applicable standards of care and that Ms. Johnson’s death was caused by a stroke that was not preventable by anyone. This evidence *777 pointed out the absence of a causal connection (medical causation) between the defendants’ conduct and the damages claimed by plaintiffs. | ./Therefore, in order to avoid summary judgment in favor of defendants, the burden shifted to plaintiffs to provide expert evidence establishing that they would be able to sustain their evidentiary burden at trial of proving, not only that breaches of the applicable standard of care occurred, but also that the alleged breaches caused Ms. Johnson’s death and/or lost chance of survival. See Samaha v. Rau, 07-1726 (La.2/26/08), 977 So.2d 880, 887-88.
Contrary to plaintiffs’ assertions, the instant case is not one of obvious negligence where a lay person can infer a physician’s fault and/or medical causation of the alleged injury without expert guidance. Plaintiffs assert that every lay person knows that strokes are, or can be, related to high blood pressure.[1] However, the facts of this case are not so simple. In so arguing, plaintiffs ignore the undisputed fact that Ms. Johnson had an extremely complicated medical history, which included chronic hypertension, diabetes, and end-stage renal disease. According to the affidavit of Dr. Suazo offered in support of summary judgment, “clinical evaluation later showed that [Ms. Johnson] had Thrombotic occlusion of the Middle Cerebral artery. Acute increase in blood pressure in this condition is not the cause but may be instead an adaptive response and vigorous decrease in blood pressure may be counterproductive.” Among other conditions, Ms. Johnson also suffered from severe gastroparesis, Par-kinsonism, cerebrovacular disease with previous stroke, and pulmonary embolism and had had two previous myocardial in-farctions and four coronary stent placements. Furthermore, in the two years prior to her death, she was admitted to the hospital seven times and had six other hospital encounters. Under |8the circumstances, expert medical testimony was required to meet plaintiffs’ burden of proving that medical malpractice occurred in the treatment of Ms. Johnson and that the alleged malpractice caused her death or lost chance of survival.[2]
Even if, as alleged by plaintiffs, material issues of fact existed regarding defendants’ alleged breach of the applicable standards of care, plaintiffs still failed to produce any admissible expert evidence establishing medical causation of Ms. Johnson’s death *778 or lost chance of survival. Such expert testimony is necessary in this case because whether or not defendants’ alleged fault caused Ms. Johnson’s death or loss of a chance of survival turns on complex medical issues far beyond the capacity of lay persons to assess. See Pfiffner, 643 So.2d at 1234. Thus, as pointed out by defendants, plaintiffs cannot prove an essential element of their claims without providing expert evidence on medical causation.
Plaintiffs attempted to provide such evidence through the affidavit of Ms. Washington. On appeal, they argue that the district court erred in disregarding Ms. Washington’s affidavit in determining whether they would be able to satisfy their evidentiary burden at trial on the issue of Ms. Johnson’s alleged loss chance of survival. They assert the district court erred in failing to conduct a Daubert[3] hearing on Ms. Washington’s qualification to testify and in failing to conclude that, as a registered nurse, she was qualified to give expert testimony on whether or not defendants’ actions reduced Ms. Johnson’s chance of survival. We disagree.
|9The admissibility of expert testimony is governed by La. C.E. art. 702, which states that, “[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.” The Daubert standard, which was adopted by the Louisiana Supreme Court in State v. Foret, 628 So.2d 1116, 1123 (La.1993), requires that expert testimony must rise to a threshold level of reliability in order to be admissible under La. C.E. art. 702. Terrebonne v. B & J Martin, Inc., 03-2658 (La.App. 1st Cir.10/29/04), 906 So.2d 431, 440.
In support of their assertion that the district court erred in not considering Ms. Washington’s affidavit, plaintiffs cite Guardia v. Lakeview Regional Medical Center, 08-1369 (La.App. 1st Cir.5/8/09), 13 So.3d 625, 631, a medical malpractice case in which this Court held that the trial court erred in disregarding the affidavits and deposition testimony of a registered nurse without first holding a hearing on her qualifications to testify. However, a review of Guardia, a case in which the plaintiff developed pressure ulcers while hospitalized following surgery, reveals that it is inapplicable herein. In Guardia, the plaintiff alleged that the nursing staff was at fault in failing to assess his skin condition and regularly change his position, which clearly were nursing duties. In contrast, the issue in this case of whether Ms. Johnson’s chance of survival was reduced by defendants’ actions clearly is not a nursing issue. Rather, this issue is inextricably bound to the complex medical determination of the cause of Ms. Johnson’s death. Such a determination requires an assessment of her complicated medical history, the multitude of serious medical conditions from which she suffered, and the effect the defendants’ acts and/or omissions had upon her. It is evident to this Court, as it was to the district court, that such a complex medical determination is beyond the expertise of Ms. | ^Washington, a registered nurse. Consequently, the district court properly excluded her opinion testimony on the issue of medical causation.
We also find no merit in plaintiffs’ argument that the district court should not *779 have considered the affidavits offered by-defendants’ experts because they were based on erroneous facts, as they did not take into account the facts alleged in the statement of uncontested facts included in plaintiffs’ opposition memorandum. Plaintiffs assert the facts alleged in their statement should have been accepted as proven since these facts were not challenged by defendants, who did not file a statement of uncontested facts as required by district court rules. Additionally, plaintiffs claim that the opinions of defendants’ experts were unreliable because they were based on Ms. Johnson’s condition on the date of her death, rather than at the time of defendants’ alleged negligence.
Plaintiffs cite no evidence for their assertions that defendants’ experts based their opinions on erroneous material facts and did not consider her condition on the date of her last dialysis treatment at BMA. Even though defendants failed to file a statement of uncontested facts as required by Rule 9.10(2)(b) of the Uniform Louisiana District Court Rules, a trial court has the authority to dispense with the strict application of local rules when such is unnecessary to the resolution of a dispute. Dan-Cin Construction Company, Inc. v. Thrasher, 08-1552 (La.App. 1st Cir.2/13/09), 9 So.3d 205, 208. In this case, a statement of uncontested facts was unnecessary in view of the fact that there was an absence of any admissible expert evidence establishing medical causation, an essential element of plaintiffs’ claims. Moreover, the affidavits of defendants’ experts state that, in addition to the submissions of the parties, the expert opinions expressed were based on a review of Ms. Johnson’s medical records, including the records of her dialysis treatment at InBMA, the records of her primary care physician, the records of the ambulance company that transported her to the hospital, and her hospital records.

CONCLUSION

Defendants submitted expert medical evidence sufficient to point out an absence of factual support establishing medical causation, which is an essential element of plaintiffs’ claims. Thereafter, the burden shifted to plaintiffs to produce admissible expert evidence sufficient to establish that they would be able to satisfy their eviden-tiary burden of proving medical causation at trial. Because plaintiffs failed to do so, the district court properly granted summary judgment dismissing their suit against defendants with prejudice. Accordingly, the judgment of the district court is affirmed. Plaintiffs are to bear all costs of this appeal.
AFFIRMED.

. Plaintiffs also argue that the doctrine of res ipsa loquitur should be applied to find negligence in this case, because it was obvious that when Ms. Johnson’s blood pressure "spiked,” defendants should have intervened or called 911, rather than placing her on the van to return home. This argument lacks merit, as res ipsa loquitur is applicable only when the injury complained of is of the type which does not ordinarily occur without negligence. Denton v. Critikon, Inc., 95-1602 (La.App. 1st Cir.5/10/96), 674 So.2d 1169, 1173. Strokes do not fall into this category of occurrences.

. Plaintiffs contend Louisiana medical malpractice law is inapplicable to that portion of their claim against Dr. Suazo that is based on his alleged order to put Ms. Johnson on the van for transportation home, rather than allowing BMA nursing staff to properly treat her. They argue that Dr. Suazo’s order does not fall within the scope of medical malpractice because it was not the performance of a medical function. However, we find this contention meritless in view of the broad definition of "malpractice” provided in La. R.S. 40:1299.41(13). This provision defines "malpractice,” in pertinent part, as "any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely_” At the time of his interaction with BMA staff on November 4, 2008, Dr. Suazo clearly was acting in his professional capacity as a ne-phrologist rendering professional services to Ms. Johnson.

. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).