DRAKE, J.
| /This is an appeal from a district court judgment, granting a motion for summary judgment in favor of the defendant/appel-lee, Blood Systems, Inc. d/b/a/ United Blood Services (“UBS”). For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY

This case involves a medical malpractice claim arising from the death of Edward Steib following a lumbar disc fusion surgery performed at The NeuroMedical Center, APMC in Baton Rouge, Louisiana. At the time of his death, Mr. Steib was 70 years old and had a medical history of coronary artery disease, hyperlipidemia, hypertension, type II diabetes, diverticulo-sis, prostate cancer, rib tumor, and arthritis.
Prior to surgery, which was originally scheduled for March 7, 2007, Mr. Steib became anemic after donating blood for his surgery at UBS, the blood bank provider for the NeuroMedical Center.[1] The Neu-roMedical Center cancelled and rescheduled his surgery to March 27, 2007. During the surgery, which began at 7:00 a.m. and lasted approximately ten hours, Mr. Steib experienced severe hypotension[2] and *412 developed into a state of coagulopathy.[3] In an attempt to correct these issues, the team operating on Mr. Steib placed an order with UBS for [ ^additional blood products to be delivered to The Neu-roMedical Center.[4] Prior to the operating team receiving the additional blood products from UBS, Mr. Steib went into multi-organ system failure and was transferred to Our Lady of the Lake Hospital (“OLOL”). Mr. Steib was pronounced dead the day after arriving at OLOL.
Claiming that the defendants failed to properly evaluate and assess Mr. Steib in preparation for his surgery, the plaintiffs filed a claim under the Louisiana Medical Malpractice Act, La. R.S. 40:1299.41 et seq.[5] On May 17, 2012, the medical review panel unanimously concluded that there was no deviation from the standard of care by the defendants. On August 16, 2012, the plaintiffs filed a suit for damages against the defendants, making the same allegations against them as presented before the medical review panel.[6]
At particular issue in this appeal is the motion for summary judgment filed by UBS on July 23, 2013.[7] UBS requested summary judgment in its favor on the |4basis that the plaintiffs lacked the necessary expert medical testimony to support their malpractice claim against UBS. The plaintiffs opposed UBS’s motion, arguing that whether an alleged delay in the deliv *413 ery of blood products by UBS to The NeuroMedical Center during Mr. Steib’s surgery played a role in his death is a material fact which precludes the granting of summary judgment.[8]
A hearing was held on UBS’s motion for summary judgment on September 3, 2013, after which the district court ordered the parties to submit additional memoranda on the issue of the standard of care applicable to UBS. The parties returned for a second hearing on UBS’s motion for summary judgment on October 28, 2013. The district court granted summary judgment in favor of UBS, dismissing the plaintiffs’ claim.[9] The plaintiffs now appeal.

LAW AND DISCUSSION

A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant.' All Crane Rental of Georgia, Inc. v. Vincent, 2010-0116 (La.App. 1 Cir. 9/10/10), 47 So.3d 1024, 1027, writ denied, 2010-2227 (La.11/19/10), 49 So.3d 387. A motion for summary judgment should only be granted if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that the movant is entitled to summary judgment as a matter of law. La. C.C.P. art. 966(B)(2).[10]
IsA summary judgment may be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time. La. C.C.P. art. 966(F)(1). Evidence cited in and attached to the motion for summary judgment or memorandum filed by an adverse party is deemed admitted for purposes of the motion for summary judgment unless excluded in response to an objection made in accordance with La. C.C.P. art. 966(F)(3). Only evidence admitted for purposes of the motion for summary judgment may be considered by the court in its ruling on the motion. La. C.C.P. art. 966(F)(2).
The burden of proof on a motion for summary judgment remains with the mov-ant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2).
Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. See La. C.C.P. art. 967(B); Pugh v. St. Tammany Parish School *414 Board, 2007-1856 (La.App. 1 Cir. 8/21/08), 994 So.2d 95, 97 (on rehearing), writ denied, 2008-2316 (La.11/21/08), 996 So.2d 1113. When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not | ^so respond, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967(B).
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the district court’s determination of whether summary judgment is appropriate. Sanders v. Ashland Oil, Inc., 96-1751 (La.App. 1 Cir. 6/20/97), 696 So.2d 1031, 1035, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light' of the substantive law applicable to this case. Christakis v. Clipper Construction, L.L.C, 2012-1638 (La.App. 1 Cir. 4/26/13), 117 So.3d 168, 170, writ denied, 2013-1913 (La.11/8/13), 125 So.3d 454.
Standard of Care — Blood Banks
In their first assignment of error, the plaintiffs argue that they established a genuine issue of material fact related, to UBS’s standard of care. Specifically, the plaintiffs aver that there was a delay by UBS. in the delivery of blood products to The NeuroMedical Center during Mr. Steib’s surgery. The plaintiffs contend that the alleged delay caused or contributed to Mr. Steib’s coagulopathy and death. The plaintiffs argue that the affidavits of their identified experts produced during discovery, as well as the testimony of Dr. Sheffield and Dr. Waguespack, establish a genuine issue of material fact regarding the timeframe in which a blood bank should comply with an order for blood products during a surgery. The alleged delay is, according to the plaintiffs, a fact that should be presented to a jury to decide whether UBS acted in accordance with the applicable standard of care.
The motion for summary judgment at issue here arose in the context of a suit for medical malpractice. To establish a claim for medical malpractice, a plaintiff must prove, by a preponderance of the evidence: (1) the standard of care applicable to the defendant; (2) that the defendant breached that standard of care; and (3) that |7there was a causal connection between the breach and the resulting injury. La. R.S. 9:2794; Samaha v. Rau, 2007-1726 (La.2/26/08), 977 So.2d 880, 883-84. Expert testimony is required to establish the applicable standard of care and whether or not that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony. See Pfiffner v. Correa, 1994-0924, 1994-0963, 1994-0992 (La.10/17/94), 643 So.2d 1228, 1233-34. Where the defendant practices in a particular specialty and the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians within that specialty. Vanner v. Lakewood Quarters Retirement Community, 2012-1828 (La.App. 1 Cir. 6/7/13), 120 So.3d 752, 755-56. Thus, to prevail at trial, the plaintiffs would be required to prove, by a preponderance of the evidence, the first essential element of their malpractice claim: the standard of care applicable to UBS. Because the operation of a blood bank is a particular medical specialty, the plaintiffs would be required to prove the standard *415 of care applicable to blood banks, through expert medical testimony.
We first note that the facts in this case are not disputed. The only alleged “genuine issue of material fact” is whether or not there was a delay by UBS in its delivery of ordered blood products to The Neu-roMedical Center during Mr. Steib’s surgery, and if there was a delay, whether the delay constituted a breach in the standard of care. The issue of whether a delay occurred does not become a material fact until the parties establish the standard delivery time for blood products ordered from a blood bank to be delivered to a surgical site during a surgery, ie., the standard of care.
Here, UBS was required to point out to the district court that there was an absence of factual support for one or more elements essential to the plaintiffs’ | sclaim, since UBS would not bear the burden of proof at trial. La. C.C.P. art. 966(C)(2). In support of its motion, the defendants presented the plaintiffs’ malpractice complaint and the unanimous opinion of the medical review panel, which concluded there was no deviation from the applicable standard of care by UBS. UBS also presented the plaintiffs’ responses to interrogatories and requests for production of documents propounded by UBS, as well as the affidavits of Dr. Stanley Gertzbein and Dr. John Stephenson, the two experts identified by the plaintiffs. The affidavits of the plaintiffs’ identified experts made no mention of UBS, nor did the experts even mention the standard of care applicable to a blood bank. The plaintiffs did not lay a foundation for Dr. Gertzbein or Dr. Stephenson as experts qualified to testify with regard to blood banking. The evidence presented by UBS pointed out to the district court the absence of evidence establishing the standard of care applicable to a blood bank and the absence of a causal connection between UBS’s conduct and any damages claimed by the plaintiffs.
Therefore, in order to avoid summary judgment in favor of UBS, the burden shifted to the plaintiffs to provide evidence establishing that they would be able to sustain their evidentiary burden at trial of proving, not only the applicable standard of care, but that breaches of that standard occurred, and that the alleged breached caused Mr. Steib’s death. La. C.C.P. art. 966(C)(2); see Jackson v. Suazo-Vasquez, 2012-1377 (La.App. 1 Cir. 4/26/13), 116 So.3d 773, 777-78. As discussed above, the plaintiffs named and submitted affidavits of two experts, Dr. Gertzbein and Dr. Stephenson, during discovery. In opposition to UBS’s motion for summary judgment, the plaintiffs relied on: medical documents related to Mr. Steib’s surgery (which were submitted with their original petition); the deposition testimony and |9an affidavit[11] of Mr. Steib’s surgeon, Dr. Waguespack; the deposition testimony of the anesthesiologist during the surgery, Dr. Sheffield; the deposition testimony of Larry Miller and Robert McBride, CRNAs; and the deposition testimony of UBS representative, Christopher Coffin.
In this case, the plaintiffs failed to produce evidence establishing that they would be able to sustain their evidentiary burden at trial of proving the standard of care applicable to a blood bank. The plaintiffs primarily relied on the testimony of Mr. Steib’s surgeon, Dr. Waguespack, and the anesthesiologist during the surgery, Dr. Sheffield. The opinions of Dr. Wagues-pack and Dr. Sheffield are not expert med *416 ical testimony regarding blood banks because the plaintiffs did not lay a foundation for these doctors to testify as experts with knowledge of the standard of care applicable to the operation of a blood bank.
Furthermore, nowhere in the testimony or affidavit of Dr. Waguespack or testimony of Dr. Sheffield did either physician articulate a standard or reasonable time period for ordered blood products to be delivered. In responding to questions regarding whether or not there was a delay in the delivery of blood products to The NeuroMedical Center during Mr. Steib’s surgery, Dr. Waguespack stated, “[i]t doesn’t necessarily imply anything more than simply he, I couldn’t get him or he did not get his blood products at a time fast enough for me.” In the affidavit Dr. Waguespack submitted in opposition to UBS’s motion, there is no statement on what the standard of care is for a blood bank regarding a reasonable timeframe for the delivery of blood products. In response to questions of whether she was aware of the procedures used by a blood bank for blood product preparation and delivery, or the standard of care, or how long blood product preparation takes, Dr. Sheffield responded, “[n]o.” Furthermore, when asked what the normal time period in which |inshe would request blood, and it would arrive on a good day, Dr. Sheffield responded, “I don’t know that answer.”
We agree with the district court that summary judgment was appropriate in this instance because the plaintiffs failed to introduce evidence in the form of qualified expert medical testimony to establish the standard of care applicable to the operation of a blood bank, specifically, blood product delivery. Therefore, this assignment of error is without merit.
“Obvious ” Negligence
Alternatively, the plaintiffs argue that the standard of care applicable to a blood bank and a breach thereof are obvious to a lay person without the assistance of expert medical testimony. The Louisiana Supreme Court has stated expert testimony is required to establish the applicable standard of care and whether or not that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony. Pfiffner, 643 So.2d at 1233-34. Because of the complex medical and factual issues involved in most cases, a plaintiff will likely fail to sustain his burden of proving his claim under La. R.S. 9:2794’s requirements without medical experts. There are instances, however, in which the medical and factual issues are such that a lay jury can perceive negligence in the physician’s conduct as well as any expert can, or in which the physician testifies as to the standard of care and there is objective evidence, including the testimony of the physician, which demonstrates a breach thereof. Even so, the plaintiff must also demonstrate by a preponderance of the evidence a causal nexus between the defendant’s fault and the injury alleged. Pfiffner, 643 So.2d at 1234.
Examples of situations in which a lay person can infer negligence and where expert testimony is not necessary include where a physician does an obviously careless act, such as fracturing a leg during examination, amputating the wrong Inarm, dropping a knife, scalpel, or- acid on a patient, leaving a sponge in a patient’s body, failure of an on-call physician to respond to an emergency where he knows or should know his presence is necessary, or where the alleged negligence consists of violating a statute and/or a hospital’s by laws. Pfiffner, 643 So.2d at 1233-34.
The district court, in its reasons for ruling on UBS’s motion stated:
*417 In this case, the plaintiff and co-defendant, Dr. Waguespack, have attempted to show that [UBS] breached its standard of care and this resulted in damage to Mr. Steib and his eventual death. They have no expert testimony to establish the standard of care for blood banks, and how long it takes to prepare the blood, or should take to prepare the blood, how many people should be on staff, how soon the blood should be delivered when requested stat or in any other way. So the question arose at the last hearing whether this was such an obvious breach of an obvious standard of care so as not to require expert testimony, similar to the supreme court decision in [Pfiffner ], a 1994 decision where the supreme court said if it’s obvious malpractice, expert testimony is not required. This, to me, is not obvious malpractice. I don’t know how many people a blood bank should have on staff at every given minute. I don’t know how quipkly they should be able to match and cross reference and do all the other things they need to do to blood before they send it over for a particular patient. I don’t see how a jury of lay people can know that. Apparently the doctors don’t know. The neurosurgeon and the anesthesiologists don’t know, because they were unable to say, or they didn’t say yet ... [t]he fact is, there has been no evidence of the standard of care for a blood bank, and I do not think this is the type of situation where a jury can infer such fault or breach of a standard of care or knowledge of a standard of care of a blood bank.
We agree with the district court. Contrary to the plaintiffs’ assertions, the instant case is not one of obvious negligence where a lay person can infer the standard of care applicable to a blood bank without expert guidance. The plaintiffs assert that every lay person knows the rules and procedures of a blood bank, specifically the process of ordering and delivering blood products to customers. Based on the facts of this case, however, we fail to see how the standard of care applicable to a blood bank would be immediately obvious to a lay person, absent expert medical testimony. Thus, the medical malpractice alleged by the plaintiffs was not of the type which was so egregious that malpractice would be obvious to a 11?Iay person. As this is not a case of “obvious negligence” under Pfiffner, this assignment of error is without merit.

CONCLUSION

UBS submitted evidence sufficient to point out an absence of factual support establishing the standard of care, which is an essential element of the plaintiffs claims. Thereafter, the burden shifted to plaintiffs to produce admissible expert evidence sufficient to establish that they would be able to satisfy their evidentiary burden of proving medical causation at trial. Because the plaintiffs failed to do so, the district court properly granted summary judgment dismissing their suit against UBS with prejudice.

DECREE

Considering the foregoing, the December 9, 2013 judgment of the district court, granting summary judgment in favor of the defendani/appellee, Blood Systems, Inc. d/b/a/ United Blood Services, is hereby affirmed. All costs of this appeal are cast to the plaintiffs/appellants, Agnes V. Steib, Francis V. Steib, Sr., and Dean Paul Gentile, as administrator of The Succession of Debra Ann Steib Gentile and in their individual and representative capacities.
AFFIRMED.

. Mr. Steib donated almost four units of blood over a nine day period at UBS. Two units of Mr. Steib's blood were autologous and were typed and matched by UBS. The NeuroMedical Center completed a Transfusion Request Form, requesting that the two donated units of Mr. Steib’s autologous blood be sent to the NeuroMedical Center for his surgery, originally scheduled for March 7, 2007.

. Hypotension is high blood pressure, usually described as a blood pressure greater than *412 two standard deviations above normal values for age and weight of the individual. In general, blood pressure exceeding 140 mm Hg systolic and 90 mm Hg diastolic pressure (140/90 mm Hg) is considered hypertensive. Attorney’s Illustrated Medical Dictionary, H42 (Ida G. Dox, Gilbert M. Eisner, June L. Mello-ni, and B. John Melloni, eds., West 1997).

. Coagulopathy is any disease that affects the blood-clotting mechanism. Attorney’s Illustrated Medical Dictionary, C57 (Ida G. Dox, Gilbert M. Eisner, June L. Melloni, and B. John Melloni, eds., West 1997).

. The NeuroMedical Center again completed a Transfusion Request Form, requesting that the two donated units of autologous blood be sent to the NeuroMedical Center for Mr. Steib's surgery scheduled for March 27, 2007. Despite the request, Mr. Steib never received the two donated units of autologous blood and was instead transfused with two units of homologous blood. The disposition of the two autologous units is unknown.

. The plaintiffs named Paul Waguespack, M.D., Douglas K. Mendoza, M.D., William H. Baird, M.D., The NeuroMedical Center, and UBS as defendants in their medical review panel complaint. The plaintiffs amended their complaint on August 11, 2009, and named Lott-Sheffield Anesthesia, Larry Miller, CRNA, Chandra S. Koritala, M.D., Hulon A. Lott, Jr., M.D., Leslie K. Sheffield, M.D., and Robert McBride, CRNA, asserting claims of malpractice arising out of the same March 27, 2007 surgery.

. The plaintiffs filed suit against Mr. Steib's primary physician, Dr. William Baird; the doctor who performed Mr. Steib’s surgery, Dr. Paul J. Waguespack; the cardiologist who gave cardiac pre-operative clearance, Dr. Douglas Mendoza; the clinic, rehabilitation, and surgical physician-owned hospital where Mr. Steib’s surgery was performed, The Neu-roMedical Center; the blood bank which provided services to The NeuroMedical Center, Blood Systems, Inc. d/b/a/ United Blood Services; and the doctors and nurses who provided anesthesia during Mr. Steib’s surgery, Lott-Sheffield Anesthesia, Dr. Hulon A. Lott, Jr., Dr. Leslie K. Sheffield, Dr. Chandra S. Koritala, Larry Miller, CRNA, and Robert McBRide, CRNA.

. In addition to the motion for summary judgment filed by UBS, Dr. Waguespack and The NeuroMedical Center, Dr. Baird and Dr. Mendoza, and the anesthesia defendants filed motions for summary judgment. Based on the production of the affidavits of the plaintiffs’ experts, the district court continued the motions filed by Dr. Waguespack, The Neu-roMedical Center, and the anesthesia defendants. The district court granted the motions for summary judgment filed by Dr. Baird and Dr. Mendoza because the affidavits of the plaintiffs’ experts did not implicate their treatment of Mr. Steib.

. Dr. Waguespack and The NeuroMedical Center also opposed UBS’s motion for summary judgment.

. The district court gave oral reasons for ruling.

.Louisiana Code of Civil Procedure article 966 was recently amended by 2013 La. Acts No. 391, § 1 and 2014 La. Acts No. 187, § 1 to provide for submission and objections to evidence for motions for summary judgment. These procedural amendments to La. C.C.P. art. 966 are not implicated in the issues presented in the present appeal.

. As previously noted, Dr. Waguespack and The NeuroMedical Center also opposed UBS’s motion for summary judgment. The affidavit of Dr. Waguespack was submitted in conjunction with their opposition.