STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2025 CA 0501

DANIELLE DARENSBOURG YOUNG

VERSUS

OTTO CHRISTIAN HALL, D.P.M.

Judgment Rendered: **NOV 0 7 2025**

\* \* \* \* \* \* \*

On Appeal from the 19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Trial Court No. C728507

Honorable Donald R. Johnson, Judge Presiding

\* \* \* \* \* \* \*

| | |
|---|---|
| John Samaha<br>Baton Rouge, Louisiana | Attorney for Plaintiff/Appellant<br>Danielle Darensbourg Young |
| Michael W. Adley<br>J. Ryan Pierret<br>Lafayette, Louisiana | Attorneys for Defendant/Appellee<br>Otto Christian Hall, D.P.M. |

\* \* \* \* \* \* \*

**BEFORE: THERIOT, PENZATO, AND BALFOUR, JJ.**

**PENZATO, J.**

Plaintiff, Danielle Darensbourg Young, appeals a summary judgment dismissing her medical malpractice action against Otto Christian Hall, D.P.M.[1] For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Ms. Young filed suit against Dr. Hall in connection with a surgical procedure performed by Dr. Hall on December 2, 2020.[2] Ms. Young maintained that the surgical procedure was to be an interphalangeal fusion of the left hallux, but according to the records, was changed to an arthroplasty. According to Ms. Young, she did not give her informed consent to the altered procedure. Ms. Young further alleged Dr. Hall was negligent and deviated from the applicable standard of care by failing to insert needed hardware during the procedure and failing to postpone the scheduled surgery in the face of the presence of cocaine in Ms. Young's system as well as a lack of vitamins D and K.

In response, Dr. Hall filed a peremptory exception of no cause of action, asserting that at the time of the surgery, a public health emergency had been declared due to the COVID-19 pandemic. Louisiana Revised Statutes 29:771(B)(2)(c)(i) provides in part that during a state of public health emergency, a healthcare provider shall not be civilly liable for causing injury to any person except in the event of gross negligence or willful misconduct. Dr. Hall maintained that Ms. Young failed to state a cause of action since her allegations of negligence occurred during a state of public health emergency and she did not assert a claim for gross negligence or willful misconduct. Prior to the hearing on Dr. Hall's exception, Ms. Young filed an

---

[1] Doctor of Podiatric Medicine

[2] Prior to filing suit, Ms. Young filed a request for a medical review panel. On October 17, 2022, the medical review panel issued an opinion that the evidence did not support the conclusion that Dr. Hall failed to meet the appropriate standard of care.

amended petition alleging that Dr. Hall's acts amounted to gross negligence. The trial court overruled Dr. Hall's exception of no cause of action.

Dr. Hall then filed a motion for summary judgment maintaining that Ms. Young would need expert witness testimony to establish that Dr. Hall deviated from the applicable standard of care and causation, and she did not have an expert. Dr. Hall further contended that Ms. Young could not prove the elements of an informed consent claim.[3] Following a hearing, the trial court took the matter under advisement. On October 21, 2024, the trial court signed a judgment granting the motion for summary judgment and dismissing Ms. Young's claims with prejudice. Ms. Young appeals, contending the trial court erred in failing to find there were material issues of fact precluding summary judgment.

## LAW AND DISCUSSION

**Summary Judgment**

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Murphy v. Savannah*, 2018-0991 (La. 5/8/19), 282 So. 3d 1034, 1038. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of civil actions. La. C.C.P. art. 966(A)(2). After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).

---

[3] Dr. Hall specifically addressed the informed consent claims in his reply memorandum in support of his motion for summary judgment. However, we find his original motion and memorandum were broad enough to encompass both Ms. Young's claim for the alleged acts of malpractice by Dr. Hall and her claim for lack of informed consent, and all of the relevant evidence was submitted in support of the motion. See Rosehill Construction, LLC v. Ted Hebert, LLC, 2022-0486 (La. App. 1 Cir. 11/28/22), 356 So. 3d 1115, 1120. Moreover, the original motion and memorandum placed Ms. Young on notice that the informed consent allegations were being challenged, as they were directly addressed by Ms. Young in her opposition. Cf. McGrew v. Waguespack, 2014-0251 (La. App. 1 Cir. 12/30/14), 168 So. 3d 690.

3

The burden of proof rests with the mover. La. C.C.P. art. 966(D)(1). Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense. Rather, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. *Id.* Thereafter, summary judgment shall be granted unless the adverse party can produce factual evidence sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. See La. C.C.P. art. 966(D)(1).

In determining whether summary judgment is appropriate, appellate courts review evidence *de novo* under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. *Reynolds v. Bordelon*, 2014-2371 (La. 6/30/15), 172 So. 3d 607, 610. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. *Succession of Hickman v. State Through Board of Supervisors of Louisiana State University Agricultural and Mechanical College*, 2016-1069 (La. App. 1 Cir. 4/12/17), 217 So. 3d 1240, 1244.

**Medical Malpractice**

To establish a claim for medical malpractice, a plaintiff must prove, by a preponderance of the evidence: (1) the standard of care applicable to the defendant; (2) the defendant breached that standard of care; and (3) there was a causal connection between the breach and the resulting injury. See La. R.S. 9:2794; *Schultz v. Guoth*, 2010-0343 (La. 1/19/11), 57 So. 3d 1002, 1006. Expert testimony is generally required to establish the applicable standard of care and whether that standard was breached, except where the negligence is so obvious that a lay person

4

can infer negligence without the guidance of expert testimony. *Id.* at 1006-07. Except for cases where the causal connection between a defendant's fault and the injury alleged is obvious, expert medical testimony is also necessary to establish causation. *Jackson v. Suazo-Vasquez*, 2012-1377 (La. App. 1 Cir. 4/26/13), 116 So. 3d 773, 776. Normally, in cases involving patients with complicated medical histories and complex medical conditions, causation is simply beyond the province of lay persons to assess. *Id.*

On appeal, Ms. Young contends the trial court erred in finding that Dr. Hall did not deviate below the standard of care by failing to place hardware in her foot in the surgery at issue and in proceeding with the scheduled surgery without assessing Ms. Young's vitamin D levels and/or her efforts to resist unlawful drugs. She contends that omitting the hardware has caused pain, an unsightly appearance, and the loss of function in the left foot, causing the need for corrective surgery. She further contends these actions constituted gross negligence and/or willful misconduct.

In support of his motion for summary judgment, Dr. Hall filed the October 17, 2022 medical review panel opinion that the evidence did not support the conclusion that Dr. Hall failed to meet the appropriate standard of care. He also filed his certified medical records and those of Ms. Young's primary care physician, Ricky Winburn, M.D. According to the medical records, Ms. Young first presented to Dr. Hall on November 19, 2020 with complaints of severe left great toe pain. Dr. Hall assessed Ms. Young as having a painful fixed hammertoe deformity of the left hallux. Her treatment plan was to undergo an interphalangeal (IP) fusion of the toe, which was scheduled for December 2, 2020. On November 23, 2020, Dr. Hall requested preoperative surgery clearance for Ms. Young for the scheduled surgery

5

from Dr. Winburn.[4] Dr. Winburn performed a preoperative examination on Ms. Young on November 20, 2020, and cleared her for surgery.

Ms. Young returned to Dr. Hall on November 30, 2020 for a preoperative visit. At that time, the surgery to be performed was indicated as "IP fusion vs. arthroplasty left hallux." Ms. Young signed an informed consent form that contained both procedures. "Interphalangeal Fusion Left Hallux" was typed, and next to that was handwritten "or arthroplasty," with Ms. Young's and Dr. Hall's initials alongside the additional handwritten language. Ms. Young was given a postoperative shoe, which was noted as being necessary for immobilization for two months.

Dr. Hall performed an arthroplasty of the left hallux on December 2, 2020. Dr. Hall noted that Ms. Young tolerated the surgery well. She was discharged in ambulatory condition with postoperative care instructions and instructions to contact Dr. Hall's office for routine postoperative follow-up care. It was noted that Ms. Young left the postoperative shoe at the hospital.

According to Dr. Hall's records, Ms. Young did not appear for her December 16, 2020 postoperative appointment. Dr. Hall's office called Ms. Young and left a message for her advising that she needed to reschedule the appointment to get her stitches out. Ms. Young scheduled an appointment with Dr. Hall for December 21, 2020 but failed to appear on that date as well. Ms. Young returned to Dr. Hall for her postoperative visit on January 8, 2021. She complained that her toe was still somewhat painful. It was noted in Dr. Hall's records that she was not in her protective shoe or any kind of dressing. Ms. Young was assessed as having postoperative edema. It was further noted that Ms. Young was noncompliant and had missed numerous postoperative appointments. She was advised to use Ace

---

[4] On the preoperative surgery clearance form provided to Dr. Winburn, the procedure indicated was written as "IP Fusion L Hallux." "IP Fusion" was crossed out and "Arthroplasty" was written underneath.

bandage wrap and wear her protective shoe and to return in one month. She did not return to Dr. Hall.

To refute Dr. Hall's motion for summary judgment, Ms. Young filed the affidavits of Catherine Johnson Riche, M.D., board certified in the field of orthopedic surgery; Kyle Lindow, D.P.M.; and Meredith Warner, M.D., also board certified in the field of orthopedic medicine. She also filed her own affidavit.

According to Dr. Riche's affidavit, Dr. Riche examined and treated Ms. Young beginning in 2021 to early 2022 in connection with her left big toe condition, as well as issues with other toes on her left foot. Dr. Riche discussed the differences between a left hallux interphalangeal joint fusion and an arthroplasty of the left hallux and noted that the surgery performed on Ms. Young was an arthroplasty of the left hallux, specifically a resection arthroplasty, and was performed by a podiatrist. She attested that an arthroplasty of the left hallux and interphalangeal fusion of the left hallux were not the same procedure; however, both could be performed by a podiatrist or an orthopedic surgeon.

Dr. Lindow testified in his affidavit that he examined and treated Ms. Young in July of 2023 and September of 2023 in connection with her left big toe condition. He attested that an interphalangeal left hallux and an arthroplasty left hallux were distinct and separate procedures but that both could be used to accomplish a similar desired outcome in certain deformities.

According to Dr. Warner's affidavit, she began treating Ms. Young in 2024 and was still treating her as of June 3, 2024, the date of her affidavit. Dr. Warner confirmed that the procedure performed on Ms. Young was an arthroplasty of the interphalangeal joint of the left great toe. She noted that there was a consent that appeared to have been initialed by Ms. Young on November 30, 2020 for the surgery that took place on December 2, 2020. She noted that if the consent was valid and

7

accurate then it appeared Ms. Young consented to an arthroplasty procedure, but Dr Warner could not ascertain the facts regarding the consent document.

While the affidavits submitted by Ms. Young confirmed that she had undergone an arthroplasty of the left hallux, none of the submitted affidavits discussed the applicable standard of care or indicated that Dr. Hall had breached the standard of care in the choice of procedure, his performance of the procedure, or his postoperative management of the Ms. Young. Accordingly, based on our review of the record, we find Ms. Young failed to prove that she will be able to satisfy her evidentiary burden of proof at trial that Dr. Hall deviated from the applicable standard of care, and therefore Dr. Hall is entitled to summary judgment in connection with her claim of malpractice.

**Informed Consent**

Ms. Young also contends there are genuine issues of material fact precluding summary judgment on her informed consent claim. According to Ms. Young, Dr. Hall did not inform her that he was immune from suit for ordinary negligence, which she argues should have been disclosed prior to elective surgery. She also contends she was not told of the change in the surgical procedure and was not otherwise made aware of the change in the procedure.

Informed consent is a claim that can be separate from a medical malpractice claim. *Patterson v. Peterson*, 2019-1604 (La. App. 1 Cir. 8/3/20), 310 So. 3d 185, 190, writ denied, 2020-01076 (La. 11/10/20), 303 So. 3d 1041. In an action based on a failure to obtain informed consent, a plaintiff must prove the following four elements: (1) a material risk existed that was unknown to the patient, (2) the physician failed to disclose the risk, (3) disclosure of the risk would have led a reasonable patient in the patient's position to reject the medical procedure or choose another course of treatment, and (4) the patient suffered injury. See La. R.S.

8

40:1157.1-1157.2; *Salvador v. Main Street Family Pharmacy, L.L.C.*, 2017-1757 (La. App. 1 Cir. 6/4/18), 251 So. 3d 1107, 1113.

As noted above, in support of his motion for summary judgment, Dr. Hall filed his certified medical records, which contain the informed consent form as well as his office notes indicating the consent form was reviewed, signed, dated, and timed. The consent form contains a section setting forth the material risks of an interphalangeal fusion or arthroplasty of the left hallux. Included in this section was a list specific to the surgery, which included pain and swelling of the foot, bleeding and/or infection, poor healing wounds, complications that cause further surgery, nerve damage resulting in pain and weakness or paralysis of the foot operated on, and complications that may cause permanent deformity, pain, or inconvenience. While Ms. Young complains of pain, an unsightly appearance, and the loss of function in the left foot, causing the need for corrective surgery, she has failed to identify a material risk of the procedure of which she was not informed.

In her affidavit filed in opposition to the motion for summary judgment, Ms. Young attested that she was not told nor made aware of the change of the procedure from an interphalangeal fusion to an arthroplasty of the left hallux. She further attested that if she did sign for the change, she did not recall making the change or when it was done. However, she has failed to identify a material risk associated with the arthroplasty that would not also be associated with the interphalangeal fusion.

Moreover, La. R.S. 40:1157.1 provides that valid informed consent requires an explanation of the nature and purpose of the procedure together with the known risks associated with a procedure of that nature. The patient should be told the nature of the pertinent ailment or condition, the general nature of the proposed treatment or procedure, the risks involved in the proposed treatment or procedure, the prospects of success, the risks of failing to undergo any treatment or procedure at all, and the risks of any alternate methods of treatment. *Snider v. Louisiana Medical Mut. Ins.*

9

*Co.*, 2013-0579 (La. 12/10/13), 130 So. 3d 922, 930; *Patterson*, 310 So. 3d at 190. The law does not require that a patient be advised of the legal burden of proof required in a medical malpractice action.

Because Ms. Young has failed to prove that she will be able to satisfy her evidentiary burden of proof at trial that a material risk existed that was unknown to her in connection with the arthroplasty, or that a reasonable patient in her position would have rejected the procedure, Dr. Hall is entitled to summary judgment in connection with her claim of lack of informed consent.

## CONCLUSION

For the above and foregoing reasons, the October 21, 2024 judgment granting summary judgment in favor of Otto Christian Hall, D.P.M. and dismissing the claims of Danielle Darensbourg Young is affirmed. All costs of this appeal are assessed to Danielle Darensbourg Young.

**AFFIRMED.**